**In re Donny and Paula HILL.**

**Hollywood Casino, Plaintiff,**

v.

**Donny and Paula Hill, Defendants.**

**Bankruptcy No. 93–31143.
Adversary No. 00–1003.**

United States Bankruptcy Court,
N.D. Mississippi.

Aug. 4, 2000.

Ken Coghlan, Oxford, MS, for Plaintiff.

Kent Haney, Clarksdale, MS, for Defendants.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a complaint filed by the plaintiff, Hollywood Casino, seeking a declaratory judgment that a certain indebtedness owed by the debtors/defendants, Donny and Paula Hill, is not subject to the discharge order previously entered in this converted Chapter 7 case; answer having been filed by the defendants; the parties having agreed that no genuine issues of material fact remain in dispute and having further agreed to submit this matter to the court for an adjudication based on memorandum briefs; and the court, having considered same, hereby finds as follows, to-wit:

## I

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

## II.

The following factual allegations, set forth in the complaint filed by Hollywood Casino ("Hollywood"), were admitted by the debtors in their answer and are therefore undisputed:

1. This case was originally filed on March 27, 1996, as a Chapter 12 Family Farmer Debt Adjustment case.

2. On May 12, 14, 29, and 31, 1999, the debtors incurred approximately $35,000.00 with Hollywood Casino. This debt was incurred by obtaining credit (in the form of "markers") at Hollywood Casino in May, 1999. However, the debtors either stopped payment on the checks tendered to pay for these markers, or the checks were returned due to insufficient funds.

3. On or about June 1, 1999, an order was entered by this court converting this case to a Chapter 7 proceeding.

4. The $35,000.00 in cash referred to in paragraph 2 hereinabove, was obtained from Hollywood Casino less than thirty days before this case was converted to a Chapter 7 proceeding.

5. On October 14, 1999, a discharge order was entered in this case granting the debtors a general discharge under § 727 of Title 11, United States Code (the Bankruptcy Code).

In the complaint, Hollywood seeks an adjudication that the indebtedness owed by the debtors is not covered by the discharge order entered on October 14, 1999, because the total amount of the debt arose after the filing of the original Chapter 12 case, but before the case was converted to Chapter 7. Hollywood asserts that the conversion of the case from Chapter 12 to Chapter 7 does not change the date of the filing of the original petition, because once converted, the case is deemed to have been filed as a Chapter 7 case from the date of the originally filed Chapter 12 petition. A Chapter 7 discharge relieves the debtor from personal liability only as to pre-petition debts. Since the debtors' obligation to Hollywood arose after the filing date of the original Chapter 12 proceeding, Hollywood argues that the indebtedness is merely a post-petition debt which is not affected by the discharge order.

In their answer, the debtors assert, as an affirmative defense, that § 348(d)[1] provides that pre-conversion claims are treated the same as pre-petition claims with the exception of administrative expense claims allowed by § 503(b). The debtors contend that because the debt owed to Hollywood is not an administrative expense, § 348(d) provides that the debt must be treated as if it arose immediately before the filing of the Chapter 12 case. As such, the debtors argue that the indebtedness owed to Hollywood was discharged by the entry of the Chapter 7 discharge order.

## III.

For reference purposes, § 348(d) is set forth in its entirety as follows:

### § 348. Effect of conversion

. . .

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately

---

1. Hereinafter, all statutory citations will be considered to be Title 11 of the United States Bankruptcy Code unless otherwise indicated.

before the date of the filing of the petition.

Section 1208, referred to in § 348(d), provides in part as follows: "The debtor may convert a case under [Chapter 12] to a case under Chapter 7 of this title at any time." Section 503(b), referred to in § 348(d), sets forth the types of administrative expense claims and the manner in which they may be asserted against an estate. In effect, § 348(d) indicates that a claim which arose against either the estate or the debtors after the order for relief in a Chapter 12 case, but before the case was converted to Chapter 7, must be treated as if the claim arose immediately before the Chapter 12 case was filed. For obvious reasons, the provision excepts administrative expense claims. Based on a review of the complaint, answer and the memoranda, the court finds that the subject indebtedness is not in the nature of an administrative expense claim.

Although not admitted by the parties, the court has reviewed the file and takes judicial notice that a Chapter 12 plan had been confirmed in this case approximately two years before the case was converted to Chapter 7. Although § 348(d) makes no distinction as to whether a plan was confirmed or not confirmed at the time of conversion, the Fifth Circuit Court of Appeals has had the opportunity to examine such a situation in a Chapter 11 context.

In *Bank of Louisiana v. Pavlovich (In re Pavlovich)*, 952 F.2d 114 (5th Cir.1992), the Bank of Louisiana loaned funds to the debtor, Pavlovich, pre-petition, as well as, post-petition following confirmation of a Chapter 11 plan. After confirmation, the debtor converted the case to Chapter 7. Bank of Louisiana then filed a complaint challenging the debtor's discharge and seeking a determination of the dischargeability of the debt pursuant to § 727(a) and § 523(a), respectively. The alleged improper conduct on the part of the debtor occurred both before and after the original petition date, as well as, both before and after confirmation of the Chapter 11 plan.

The bankruptcy court, upon the debtor's motion, dismissed the bank's adversary proceeding, concluding that the confirmation process discharged the debtor from any dischargeable debts arising pre-confirmation, and that the res judicata effect of confirmation now prevented the bank from raising any discharge and/or dischargeability issues which had not been timely raised before confirmation. After expressing "some trepidation," Circuit Judge Edith A. Jones, writing for the court, analyzed the impact of a confirmed plan of reorganization on a subsequent conversion to Chapter 7, as follows:

[C]reditors of the putatively reorganized debtor who find themselves victimized by post-confirmation acts that would justify revocation of the debtor's discharge are not prevented by § 348(d) from asserting such a claim upon conversion to Chapter 7. Further, those who become creditors of the debtor between the dates of confirmation and conversion may contest the dischargeability of the particular debts owed to them. Creditors whose claims arise from and after confirmation are not barred by the event of confirmation from asserting such claims, except to the extent that they arise from pre-confirmation acts.

The foregoing discussion demonstrates that the bankruptcy court properly dismissed the bank's § 523 and § 727 complaint to the extent that it depended upon pre-confirmation events. As a creditor emerging with reconstructed rights against Pavlovich after confirmation, and which extended new value to Pavlovich after confirmation, however, the bank did have the right to challenge Pavlovich's post-confirmation actions.

*Id.* at 119.

Clearly, *Pavlovich* is distinguishable on its facts from the matter presently before this court because it focuses essentially on the denial of the debtor's discharge and/or the determination of the

dischargeability of a debt resulting from the debtor's misconduct. Hollywood's complaint, which does not allege misconduct, seeks only declaratory relief as to the extent of the debtors' discharge. *Pavlovich* provides that even if the creditor is bound by a confirmation order, that creditor may later object to the converted debtor's Chapter 7 discharge or the dischargeability of a debt if the debt arose after confirmation and the debtor committed post-confirmation acts which support the denial of discharge or the non-dischargeability of the debt. It must be noted that in the *Pavlovich* opinion, the court specifically stated in footnote 3 that the complaint filed by Bank of Louisiana was "timely filed" under Bankruptcy Rules 4004(a) and 4007(c). Accordingly, the court concluded that § 348(d) did not prevent a creditor, holding a post-confirmation/pre-conversion claim, from filing a complaint to object to the debtor's discharge or to determine the dischargeability of a debt after the conversion of the case to Chapter 7. However, the complaint must be filed within the time parameters set by Bankruptcy Rules 4004(a) and 4007(c). These rules require that a complaint be filed within sixty days of the date first set for the meeting of creditors unless the court grants an extension of the time period upon a motion timely filed before the expiration of the sixty day period. For reference purposes, the pertinent portions of Bankruptcy Rules 4004 and 4007 are set forth as follows:

**Rule 4007. Determination of Dischargeability of a Debt.**

. . . .

**(c) TIME FOR FILING COMPLAINT UNDER § 523(C) IN CHAPTER 7 LIQUIDATION, CHAPTER 11 REORGANIZATION, OR CHAPTER 12 FAMILY FARMER'S DEBT ADJUSTMENT CASES: NOTICE OF TIME FIXED.** A complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subsection. The motion shall be filed before the time has expired.

**Rule 4004. Grant or Denial of Discharge.**

**(a) TIME FOR FILING COMPLAINT OBJECTING TO DISCHARGE; NOTICE OF TIME FIXED.** In a Chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). In a Chapter 11 reorganization case, the complaint shall be filed no later than the first date set for the hearing on confirmation. At least 25 days' notice of the time so fixed shall be given to the United States Trustee and all creditors as provided in Rule 2002(f) and (k) and to the trustee and to the trustee's attorney.

**(b) EXTENSION OF TIME.** On motion of any party in interest, after hearing on notice, the court may for cause extend the time to file a complaint objecting to discharge. The motion shall be filed before the time has expired.

Although neither stipulated nor admitted by the parties, the court has reviewed the file and finds that the first meeting of creditors in this converted Chapter 7 case was first scheduled for, and actually held, on July 12, 1999. Accordingly, any complaint to deny discharge or to determine the dischargeability of a particular debt should have been filed on or before September 10, 1999. No motions to extend the 60 day time period were filed. Hollywood admitted in its memorandum that its representative attended the aforementioned first meeting of creditors, so it clearly was aware that it had been scheduled as a creditor in the converted case.

## IV.

Hollywood's complaint was filed on January 5, 2000, as a declaratory judgment action. In its memorandum brief, Hollywood acknowledges that the "plain" language of § 348(d) provides that the pre-conversion claim should be treated as a pre-petition claim for discharge purposes. However, Hollywood asserts that the declaratory judgment complaint should be considered, based on the principal of "excusable neglect," as a late filed complaint to determine the dischargeability of a debt. Notwithstanding that its representative attended the Chapter 7 § 341(a) meeting of creditors, Hollywood argues that it never received official notice of the conversion to Chapter 7 or the date on which discharge/dischargeability complaints were due. This argument is not well taken.

By providing that a bankruptcy court may enlarge the time for taking action under Bankruptcy Rules 4004(a) and 4007(c), only to the extent stated in those rules, Bankruptcy Rule 9006(b)(3) explicitly excepts Rules 4004(a) and 4007(c) from the "excusable neglect" defense. Accordingly, since Hollywood's declaratory judgment complaint was filed well beyond the bar date for dischargeability complaints, it cannot be considered by the court as an "informal" discharge/dischargeability complaint under the theory of "excusable neglect.".

Hollywood asserts that it did not receive official notice of the complaint bar date in this case because the debtor failed to timely schedule the Hollywood debt.[2] Section 523(a)(3)(B) provides that a debt is not discharged if it was not scheduled in time for the creditor to timely request a determination of dischargeability. However, this section also provides that if the

creditor had actual knowledge of the bankruptcy case within time to file a complaint, but failed to do so, the debt is discharged.

This court recently had the opportunity to examine the effect of a creditor's actual knowledge of a bankruptcy filing as it relates to timely filing complaints to determine dischargeability. The facts in *Billy Walker v. William S. Hammons, Sr., et al. (In re Hammons)*, 252 B.R. 97 (Bankr. N.D.Miss.2000) concerned a used car business operated by Hammons and his two sons. When the business began to experience financial difficulties, Billy Walker, an acquaintance of Hammons agreed to loan the business $30,000.00. This money was used to gain the release of four vehicles which had been repossessed. The parties agreed that Walker would be repaid once the four released vehicles were sold. Walker was never paid. Hammons filed bankruptcy on March 2, 1999, but Walker was not listed as a creditor in his schedules. The bar date for filing complaints was designated as June 7, 1999. Walker filed a complaint on July 19, 1999, seeking an adjudication that the debt was non-dischargeable pursuant to either § 523(a)(2)(A)(fraud) or § 523(a)(3)(B)(failure to schedule the debt). Hammons filed a motion to dismiss the complaint as being time barred. Walker responded by stating that he had never been listed as a creditor and had never received notice of the bankruptcy filing or the complaint bar date. Walker argued that since he had no notice, his late filed complaint should be allowed because of "excusable neglect."

The court pointed out that the "excusable neglect" exception does not apply to the filing of a § 523(a)(2)(A) complaint.

**2.** The court file indicates that the official notice of the date set for the meeting of creditors, which includes the deadline for filing complaints, was mailed to debtors' counsel for dissemination on June 18, 1999. The file reveals that the debtors did not file an amended Schedule F reflecting Hollywood as an unsecured creditor until June 21, 1999.

However, the file includes a certificate of service, entered on July 6, 1999, which reflects that the debtors gave notice of the conversion of the Chapter 12 case to Chapter 7 to all creditors, including Hollywood, on July 1, 1999. The meeting was held, as scheduled, on July 12, 1999, and, as noted earlier, attended by a Hollywood representative.

The only issue before the court was whether the fraud count in the complaint should be dismissed as being time barred. At the hearing on the motion to dismiss, Hammons candidly admitted that he had failed to list Walker as a creditor in his schedules. However, he testified that Walker drove him to his bankruptcy attorney's office in order to discuss the dismissal of the bankruptcy filing. Hammons disputed Walker's assertion that he was informed by Hammons that the case would, in fact, be dismissed. Nevertheless, Walker did not deny that he drove Hammons to the attorney's office so that the bankruptcy case could be discussed. This event occurred at least six weeks before the complaint bar date. Accordingly, the court found that even though Walker had received no official notice of the bankruptcy filing and/or the complaint bar date, he had actual knowledge of the bankruptcy filing within ample time to file his complaint or a motion for an extension of time. Since he failed to do either in a timely fashion, the § 523(a)(2)(A) count of the complaint was dismissed.

Concerning the remaining count which asserted that the debt should be nondischargeable because it was not scheduled, the court noted that there is no bar date for the filing of § 523(a)(3)(B) complaints. However, the court pointed out that claims, which are not scheduled, are nondischargeable only if the creditor had no knowledge of the bankruptcy filing in time to meaningfully participate in the administration of the case. The court indicated that Walker's having actual knowledge of the bankruptcy case in time to file a § 523(a)(2)(A) complaint *might* have a significant impact on the remaining § 523(a)(3)(B) allegation. However, an evidentiary hearing was necessary to resolve the factual dispute.

■ In the matter presently before the court, § 348(d) applies so that the post-petition/pre-conversion debt which the debtor incurred with Hollywood is deemed to have arisen before the date of the origi-nal Chapter 12 filing. Accordingly, the debt was discharged by the discharge order entered in this Chapter 7 case on October 14, 1999. Hollywood had the right to contest the dischargeability of this debt by filing a complaint to determine dischargeability within 60 days from the date first set for the Chapter 7 meeting of creditors. Since neither a complaint nor a motion to extend the time to file a complaint was filed on or before September 10, 1999, the Hollywood debt was automatically discharged pursuant to § 523(c)(1). Although Hollywood *may* never have received an official notice regarding the deadline for filing complaints, it is undisputed that Hollywood had actual knowledge of the Chapter 7 case as evidenced by the attendance of a Hollywood representative at the Chapter 7 first meeting of creditors. If a creditor has actual knowledge of a pending bankruptcy case before the expiration of the deadline to file complaints to determine dischargeability, the lack of official notice from the court becomes a moot point. Numerous cases decided by the Fifth Circuit Court of Appeals place a heavy burden on creditors to verify the deadline for filing complaints and to act accordingly in a timely manner. Even if a complaint had been timely filed, Hollywood would have been saddled with the burden of proving misconduct on the part of the debtors. On most occasions, this can become a most difficult task.

Based on the foregoing analysis, the court finds that the complaint of Hollywood is not well taken and should be dismissed. An order will be entered accordingly.