841 So.2d 1148 (2002)
Louis Rene CARITE, Jr., Appellant,
v.
Barbara CARITE, Appellee.
No. 2001-CA-00691-COA.
Court of Appeals of Mississippi.
July 30, 2002.
Rehearing Denied November 26, 2002.
Certiorari Denied April 3, 2003.
*1150 Roy J. Perilloux, Jackson, James Eldred Renfroe, Daniel Brian Allen, attorneys for appellant.
Monique Bordelon Brown, Jackson, attorney for appellee.
Before McMILLIN, C.J., LEE, and BRANTLEY, JJ.
BRANTLEY, J., for the Court.
¶ 1. On January 17, 2001, the Hinds County Chancery Court entered a judgment which found Louis Carite in contempt of court for failing to comply with the child support and division of property agreement that had been incorporated into a divorce judgment entered on October 5, 1990. In his appeal to this Court, Louis asserts that the chancery court erred on three main issues: 1) finding him in contempt and awarding one-third of his retirement benefits to Barbara Carite, 2) finding him in contempt and awarding back child support to Barbara, and 3) the judgment *1151 of the chancery court was inconsistent with the chancery court's order in this action, in that the judgment awarded a portion of his retirement, child support arrearage and attorney's fees to Barbara, while the opinion only addressed the issue of child support arrearage. Finding no error, we affirm.

FACTS
¶ 2. Louis and Barbara Carite were married on December 14, 1968. They had one child, Jimmy Carite, who was born on January 17, 1974. They divorced on grounds of irreconcilable differences on October 5, 1990. A separation, child custody and property settlement agreement was incorporated into the final judgment of divorce. In this agreement, Louis agreed to pay $300 per month in child support and to divide his "pension" and "profit sharing" so as to provide Barbara with one-third of the value.
¶ 3. On October 4, 2000, Barbara filed a motion for citation of contempt which led to the present appeal. Following a hearing on the merits on September 28, 2000, the chancery court held that Barbara was entitled to receive one-third, or $411.80 per month, from Louis's future monthly pension benefits from Lucent Technologies (Lucent), as well as an award of $5,161.06 which was based upon pension benefits Louis had already received. The chancery court further held that Barbara was entitled to an award of one-third of the stock which Louis had received as profit sharing. The chancery court's judgment did not specifically state a dollar figure for this award, but a business affidavit introduced into evidence shows that this stock was comprised of approximately 135 shares of stock in Lucent. The chancery court further held that Barbara was entitled to an award of $20,236.12 in back child support. Lastly, the chancery court held that while both parties should bear their own attorney's fees, Barbara was entitled to $500 in attorney's fees incurred in defending against Louis's motion for summary judgment, which had previously been denied, and that Louis should pay court costs of $348.94.
I. RETIREMENT BENEFITS
¶ 4. Louis asserts five separate arguments to support his assertion that the chancery court erred in finding him in contempt and in awarding Barbara one-third of his pension and profit-sharing benefits. Louis's main defense against Barbara's claim that he was in contempt centered around his assertion that she should have taken steps to assert her right to his pension and profit-sharing at the time the divorce was granted, rather than waiting ten years.
¶ 5. Louis contends that the seven year statute of limitations of Miss.Code Ann. § 15-11-43 (Rev.1995) required that Barbara bring her claim for the retirement benefits within seven years of the original judgment of divorce. The statute of limitations on a right to compel a monetary judgment in a domestic action begins to run on the date on which the payment is due and payable. See, e.g., White v. Abel, 802 So.2d 98, 102(¶ 12) (Miss.Ct.App.2001). Barbara contends that the statute of limitation only began to run on the date of Louis's retirement. Louis retired in December of 1999. Barbara testified as to a letter she had written to Lucent in 1995, and based on a conversation with someone at Lucent in response to her letter, it was her understanding that only Louis could request Lucent to apportion the pension benefits in accordance with the property settlement agreement. The property settlement agreement provided that "[h]usband agrees to divide any Life Insurance Policies, Facility Closing or Profit Sharing, Pension, and/or any other benefits not listed *1152 herein 1/3 to Wife and 2/3 to Husband." Barbara also introduced into evidence a business affidavit from the records custodian of Lucent's Pension Program which stated, "said pension benefits were available to Louis R. Carite, Jr., according to the provisions of the Lucent Technologies Inc. Pension Plan contingent upon the date of his retirement at Lucent Technologies, Inc." Conversely, Louis testified that because his benefits were vested, he could at any time have withdrawn benefits at a penalty. He contends it was Barbara's duty to petition the chancery court for a Qualified Domestic Relations Order (QDRO) in accordance with the Employee Retirement Income Security Act (ERISA), and her failure to do so was a failure to enforce the original judgment for divorce.
¶ 6. The chancery court found that the original divorce judgment and property settlement agreement "required Mr. Carite to take the initiative in giving her her interest." The chancery court also found that Barbara "made every reasonable effort to try and obtain that money from the pension and was told that she could not have it at that time, so I felt that with them denying her that relief that she had done all that she could." Thus, the chancery court found that Barbara's claim that Louis was in contempt was not time barred. Although Miss.Code Ann. § 15-11-43 (Rev.1995) contains no specific tolling provision, our supreme court has found that the seven year time period is subject to tolling under the equitable doctrine of laches, where a former spouse has requested ordered support and the spouse owing the support fails to comply, and where the delay has not disadvantaged the defendant. Rubisoff v. Rubisoff, 242 Miss. 225, 234, 133 So.2d 534, 536-37 (1961).
¶ 7. In this case, the chancery court found that the settlement agreement required Louis to initiate the apportioning of pension benefits, and stated that Barbara had acted on good faith information supplied by Lucent in not taking action within the seven year time period. A chancery court's findings in actions dealing with property division are subject to discretion and will not normally be disturbed unless they are in manifest error and will be upheld if supported by substantial credible evidence. Weston v. Mounts, 789 So.2d 822, 826(¶ 15) (Miss.Ct.App.2001). However, the application of a statute of limitation is subject to de novo review. Sarris v. Smith, 782 So.2d 721, 723(¶ 6) (Miss.2001). Mindful of the more stringent standard of review applicable to applications of the statute of limitation, we also note that the chancellor viewed the witnesses and made determinations of credibility and weighed evidence in a matter of equity. In this case, we find the chancery court did not err in finding that this action for contempt was not time barred by Miss. Code Ann. § 15-11-43 (Rev.1995).
¶ 8. Additionally, Louis contends because Barbara failed to initiate a QDRO to Lucent ordering it to distribute the pension benefits in accordance with the property settlement at the time of the original divorce decree, any attempt to initiate a QDRO as part of her action for contempt was actually an attempt to modify the divorce settlement. Contrary to that assertion, our supreme court has expressly found it proper to issue a QDRO when it was determined four years after a divorce that the pension benefits had been hidden, and the QDRO was necessary to effectuate the intent of a property settlement agreement. Holloman v. Holloman, 691 So.2d 897, 901 (Miss.1996). The actual basis for this argument is that Louis contends that the terms of the original judgment for divorce and division of property agreement were insufficient to satisfy the requirements of a QDRO as set forth in Parker v. *1153 Parker, 641 So.2d 1133, 1136 (Miss.1994). Louis further contends that because the seven year statute of limitations upon enforcing the original judgment had run, Barbara had insufficiently pled her action when she requested relief based upon a motion for contempt rather than a motion to modify the original judgment. While the original judgment for divorce may well have been insufficient to establish a QDRO, this argument is irrelevant to the disposition of this appeal because the chancery court did not err in declining to find the motion for contempt time barred. That is, because the chancery court had the authority to order a proper QDRO issue to enforce its original judgment, there is no merit to Louis's assertion going to the QDRO.
¶ 9. Moreover, Louis asserts that the chancery court erred in excluding testimony of an expert witness he sought to call to testify "as to when Mr. Carite became vested and the proper procedure a spouse must follow to become entitled to a portion of an ERISA (Employee Retirement Income Security Act) pension plan." Louis characterizes this as a denial of his due process rights under the Fourteenth Amendment to the United States Constitution. However, the issue really turns upon whether the expert testimony was relevant. To be admissible, expert testimony must be relevant in that it tends to be probative to a factual issue in question. Winters v. State, 773 So.2d 973, 975(¶ 10) (Miss.Ct.App.2000). Construing this provision, the chancery court held the original divorce judgment and property settlement agreement "required Mr. Carite to take the initiative in giving her her interest." Therefore, whatever testimony the expert would give as to what Barbara should, or could, have done was irrelevant. There is no constitutional right to present irrelevant evidence. See, e.g., Capps v. Collins, 900 F.2d 58, 60 (5th Cir.1990). Any real merit going to Louis's contention that he should have been allowed to present the expert testimony goes to whether Barbara failed to initiate a QDRO, and the effect of that failure. As the chancery court did not err in declining to find the claim time barred or in ordering a QDRO to issue in connection with the present underlying motion for contempt, the testimony was irrelevant and the chancery court did not err in refusing to allow it to be admitted.
¶ 10. Additionally, Louis contends that the division of property agreement was too vague to provide Barbara a right to Louis's pension and stocks obtained through profit sharing. The property agreement specifically stated that Barbara would receive one-third of Louis's "pension" and "profit sharing." The parties' intent expressed in a property settlement agreement is controlling as to its enforcement. Holloman, 691 So.2d at 899. Further, a chancery court's finding in a property division action is subject to an abuse of discretion standard. Weston, 789 So.2d at 826(¶ 15). In this case, the chancery court did not make any finding as to whether the division of property agreement was, or was not, ambiguous. However, a general rule of appellate review is that findings will be presumed consistent with a judgment. Par Industries, Inc. v. Target Container Co., 708 So.2d 44, 47(¶ 4) (Miss.1998). Consequently, because the chancery court enforced the property settlement agreement, it is presumed that the chancery court did not find that the agreement was so vague as to prevent Louis and Barbara's intent from being ascertained. Given the express language of the property agreement, there is no merit to the assertion that the property agreement was too vague to be enforced, and the chancery court did not err in enforcing it.
*1154 ¶ 11. Lastly, Louis contends that the chancery court erred in not admitting into evidence bankruptcy court records which he asserts show prior inconsistent statements by Barbara. He contends that Barbara stated in these records that she had no pension benefits. The chancery court found these records to be irrelevant for two reasons. First, the chancery court stated the issue before the court was the legal effect of the original divorce decree, which was a matter of law. This was a matter of judicial interpretation, and Barbara's opinion as to a matter of law was irrelevant. Secondly, the chancery court found Barbara's statement before the bankruptcy court was not inconsistent with her testimony. While Barbara made the statement to the bankruptcy court in September of 1999 that she had no pension benefits, she also testified in the chancery court that she had been told by Lucent that she could not receive benefits until Louis retired, and he did not retire until December of 1999. The chancery court correctly found that because Barbara believed she had no means to access Louis's retirement until December of 1999, her statement that she had no pension benefits in September of 1999 did not contradict her testimony. A chancery court's rulings as to the relevancy of evidence are subject to a discretionary review. Mississippi Transp. Comm'n v. Fires, 693 So.2d 917, 920 (Miss.1997). Under these facts, there is no merit to the assertion that the chancery court erred in finding the bankruptcy records irrelevant, and the chancery court did not err in refusing to admit them.
II. CHILD SUPPORT
¶ 12. Louis contends that the chancery court erred in awarding unpaid child support. Louis's primary contention concerning this issue is that the chancery court erred in not holding that his son, Jimmy, became emancipated when he was eighteen years old and began working full-time. He asserted that Jimmy was emancipated on or before January 20, 1992, and because Barbara's motion for contempt was not brought until June 7, 2000, the claim for unpaid child support was barred by the seven year statute of limitation of Miss.Code Ann. § 15-1-43 (Rev.1995).
¶ 13. Factual findings by a chancery court will not be disturbed if supported by substantial credible evidence. Tanner v. Roland, 598 So.2d 783, 785-86 (Miss.1992). Mississippi Code Annotated § 93-5-23 (Rev.1994) provides the standards to be considered when determining when emancipation occurs. In this case, the chancery court heard testimony concerning this issue, and then requested briefs before issuing an order on the merits. The chancery court found that neither Barbara nor Jimmy renounced their "correlative rights" as required by Caldwell v. Caldwell, 579 So.2d 543, 549 (Miss.1991). The chancery court found that while Jimmy was not in school full-time and held full-time employment, he continued to live at home and Barbara continued to perform parental duties. Further, while Jimmy testified Barbara requested that he pay $250 a month in rent, Barbara also testified that her costs in providing care for him exceeded that amount, and without Jimmy's contributions, she could not have provided his care. The chancery court specifically found that this arrangement did "not rise to the level required for emancipation." Given the consideration given to this issue, we cannot say the chancery court abused its discretion in making this finding. We are mindful that appellate review of the application of a statute of limitations is subject to a de novo standard. Sarris, 782 So.2d at 723(¶ 6). We also note the careful consideration that the chancery court gave to the issue of emancipation. We find that the chancery court did not err in finding that *1155 Jimmy did not become emancipated until his twenty-first birthday, on January 17, 1995, and the seven year statute of limitations of Mississippi Code Annotated Section 93-5-23 (Supp.2001) did not bar Barbara's claim for unpaid child support.
¶ 14. Additionally, Louis contends that Barbara should have been collaterally estopped from claiming she was owed unpaid child support because she had stated to a bankruptcy court she had no income from "alimony or support." The chancery court found this evidence to be irrelevant. First, the chancery court noted that the right to receive the support went to Jimmy and not to Barbara, and she could not make a statement against another person's interest. Secondly, the chancery court found that because this was a contempt action, the original judgment for divorce created the right to receive child support, and the ultimate issue was whether the chancery court had the power to enforce its own order, and Barbara's statements had no effect upon the chancery court's powers of contempt, even though the statements could have some effect in the bankruptcy proceedings. "The objective of civil contempt is to compel obedience to the orders of the court." Shepherd v. Shepherd, 769 So.2d 242, 246(¶ 19) (Miss.Ct.App.2000). While Barbara's statements in bankruptcy court might have some bearing upon proceedings there, any statement she made in that court cannot deprive the chancery court of the power to enforce its own order. Therefore, the chancery court did not err in finding Barbara's statement in the bankruptcy court irrelevant.
¶ 15. Additionally, Louis contends that the chancery court abused its discretion by awarding the back child support to Barbara rather than Jimmy. During the proceedings, Jimmy never sought to compel an accounting. Louis cites no authority to show that he has standing to assert a direct claim by Jimmy to receive the unpaid support. There is no impropriety in a parent receiving an award of back child support, though the parent has a legal duty to use the award for the child's benefit. Alexander v. Alexander, 494 So.2d 365, 367 (Miss.1986). Under the facts of this case, there was no abuse of discretion in the chancery court's award of the judgment for unpaid support for Barbara.
¶ 16. Additionally, Louis asserts that the chancery court abused its discretion in not granting Louis a set-off from the amount of unpaid child support for the funds he expended in buying Jimmy a pick-up truck. Louis contends that when Jimmy reached his sixteenth birthday in 1992, he and Barbara agreed that he would buy a pick-up truck and pay the insurance for Jimmy in lieu of his child support obligations. Barbara denied making this agreement. She testified that prior to Louis buying the pick-up truck, Jimmy already had a vehicle to drive. Barbara was employed as a bank teller living a moderate life style. In 1992, Jimmy was not contributing to household expenses. The chancery court stated in its order:
[t]his Court is sympathetic to Defendant's plight, but a vehicle was not a necessity in these circumstances and was not in the manner of the child support ordered by the Court. Therefore, Defendant is not entitled to a credit for the payments of the vehicle or the insurance. As our Supreme Court has stated, he who unilaterally modifies a court order does so at his own peril. Alexander v. Alexander, 494 So.2d 365, 367 (Miss.1986).
Under these facts, the chancery court did not abuse its discretion in denying Louis's request for the set-off.
*1156 III. INCONSISTENCY BETWEEN ORDER AND JUDGMENT
¶ 17. Louis asserts the chancery court abused its discretion because an order the chancery court issued after it received briefs on the issue of the unpaid child support only addressed that single issue, while the judgment that was issued approximately one month after the order dealt with all three issues raised in Barbara's pleading: unpaid child support, retirement benefits and attorney's fees. Louis asserts no authority for this argument. Failure to cite legal authority in support of a proposition may be considered a waiver of the merits of the issue. Grey v. Grey, 638 So.2d 488, 491 (Miss.1994).
¶ 18. Moreover, there is no merit to Louis's argument. The chancery court held a hearing going to all three issues. During the hearing, the chancery court requested briefing on the single issue of the unpaid child support, and at the conclusion of the hearing, it made bench rulings in Barbara's favor on the issues of retirement benefits and attorney's fees. Following consideration of the briefs, the chancery court issued its order. Approximately one month later, the chancery court issued the judgment which recited the relief granted in the order going to child support and recited the relief it had made in its bench ruling on the claims for retirement benefits and attorney's fees. A trial court may award any and all relief requested on any and all issues addressed in a party's initial pleadings. Lehman-Roberts Co. v. State Highway Comm'n, 673 So.2d 742, 744 (Miss.1996). There was nothing improper in the chancery court's entry of its judgment.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS AND CHANDLER, JJ., CONCUR. IRVING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, J.
IRVING, J., Concurring in Part, Dissenting in Part.
¶ 20. The majority concludes that the chancellor did not err in declining to time-bar Barbara's claim for back child support for the minor child of the parties. I have tremendous respect for my colleagues in the majority. However, I cannot agree with this conclusion; therefore, I respectfully dissent from this portion of the majority opinion.
¶ 21. The evidence is undisputed that the minor child, Jimmy, turned eighteen years of age on January 20, 1992, and that he became employed full-time the Monday following his eighteenth birthday. The evidence is also undisputed that Jimmy has not been enrolled in school on a full-time basis since reaching his eighteenth birthday.
¶ 22. Barbara, the mother, filed her motion for citation for contempt on June 7, 2000. In this motion, she sought to hold Louis, the father, in contempt for, among other things, the failure to pay child support as ordered on October 5, 1990. If Jimmy became emancipated on January 20, 1992, then a claim for child support arrearage had to be made prior to January 20, 1999, to avoid the seven-year time bar for collecting a judgment. However, no complaint or petition was filed seeking a declaration of emancipation for Jimmy. *1157 The issue was raised in the contempt proceedings.
¶ 23. As already observed, the chancellor declined to find that Jimmy had become emancipated on January 20, 1992. The chancellor's declination in this regard must be viewed under the abuse of discretion standard. I believe that discretion was abused in this case.
¶ 24. The record reflects that in September 1994, Jimmy moved out of his mother's home. There is no dispute about this fact. Therefore, the focus is on Jimmy's status during the period between January 20, 1992, and September 1994. On January 20, 1992, Jimmy started working full-time as a diesel mechanic. The record does not reveal his rate of pay, except that it was above minimum wage.
¶ 25. On direct examination, Jimmy gave the following pertinent testimony:
Q. Okay. Up until the time that you moved out, sir, did you feel you were able to support yourself on your own?
A. I never debated that issue with myself or anything.
Q. Okay.
A. I was content with living at home.
Q. Did you list on your college and stuff that that was your residence?
A. I'm sure I did.
Q. Okay. Thank you. I have a couple of more questions. The money that you made, Mr. Carite, a portion you gave to your mother, approximately 100 to 250 a month over a time period, what did you do with the rest of your money, sir?
A. Spent it on whatever I wanted to.
Q. Okay. Did you buy gas for your vehicle?
A. I did.
Q. Did you pay for maintenance for your vehicle?
A. Yeah.
Q. Did you go out with your friends, sir?
A. Sure, I did.
Q. Okay. How often did you go out with your friends?
A. I don't know. Every night that I wanted to, seven days a week.
Q. That's fair and I understand. What I'm askinglet me go further. Do you know how much you spent at that time period on going out with your friends?
A. Whatever I didn't give my mother, I spent from paycheck to paycheck.
* * * * * *
Q. Now, when did you turn eighteen?
A. I'm not sure.
Q. Was that January the 17th of '92?
A. Yes.
Q. Okay. When did you go to work full time?
A. Full time?
Q. Yes, sir.
A. I believe it was the day after I turned eighteen years old.
Q. Okay. Would it be correct to say it was the first Monday after you turned eighteen?
A. Yes, sir.
Q. And that would have been January the 20th of '92?
A. Yes, sir, I believe so.
Q. From the day that you went to work full time when you were eighteen, have you worked continuously on a fulltime basis?
A. Yes, sir.
Q. From the day you left after having completed your course work at Hinds Community College on December *1158 the 20th, 1991, did you ever again enroll on a full-time basis at an educational institution?
A. No, sir.

* * * * * *
¶ 26. On cross-examination, Jimmy gave the following testimony:
Q. Okay. I wanted to discuss the amount of payments you made to your mother while your were still living at home. Is it your testimony you paid $250 a month to your mother while you were still living at home? Is it your testimony you paid $250 a month to your mother while you were still living at home?
A. Towards the end of my timeright before I moved out, that's how much I was paying approximately. I don't know exactly the total figures of what it was costing me a month to live with her. But it was approximately that much, yes, sir.
Q. And the money you were paying to your mother was money you earned from your full-time employment?
A. Yes, sir.
Q. And I believe at you deposition you referred to that as rent.
A. Yes, sir.
¶ 27. Mississippi Code Annotated section 93-5-23 (Supp.2001), states in pertinent part:
The duty of support of a child terminates upon the emancipation of the child. The court may determine that emancipation has occurred and no other support obligation exists when the child:
(c) Discontinues full-time enrollment in school and obtains full-time employment prior to attaining the age of twenty-one years.
¶ 28. The quoted testimony, which was not disputed, eliminates any contention that Jimmy continued to be enrolled full-time in school and had not obtained full-time employment prior to attaining the age twenty-one years. Since the evidence is undisputed that Jimmy had discontinued full-time enrollment and obtained full-time employment prior to his twenty-first birthday, it appears to me that, despite the discretionary authority permitted by the statute, the chancellor must give some explanation or justification for his decision; otherwise, the decision becomes arbitrary and capricious.
¶ 29. It should be noted that, although the emancipation issue focuses our attention to the period following Jimmy's eighteenth birthday, Jimmy actually dropped out of high school in the ninth grade. After leaving high school, Jimmy enrolled in Hinds Community College in the vocational technical department, eventually earning a degree in diesel mechanics. He also earned his general education development (GED) certificate after graduating from Hinds. He acquired his GED by going to school at night while working full-time.
¶ 30. The chancellor, relying upon Caldwell v. Caldwell, 579 So.2d 543 (Miss.1991), was not persuaded that Jimmy had become emancipated because Jimmy's mother "continued to perform various parental duties including cooking, laundry, cleaning and the like." I find the chancellor's and the majority's reliance upon Caldwell to be misplaced. The facts in Caldwell are easily distinguishable from our facts.
¶ 31. In Caldwell, the father was ordered to pay for his son's college expenses and car insurance. Id. at 548. When the son called his father for money for his college expenses, the father told him that money was scarce, and asked him if he wanted to go to school or stay out and work full-time. Id. The son, who had already started working part-time during *1159 the summer, felt his father was attempting to discourage him from going to school. Id. When the father did not produce the funds for his son's college expenses, the son continued to work, becoming a full-time employee approximately a year later. Id. The son paid his truck note from his earnings but did not contribute to the household expenses. Id. He attended East Mississippi Community College part-time, at his own expense. Id. The chancery court found that the son had been emancipated. The Mississippi Supreme Court disagreed. In reversing the chancellor, the supreme court said this:
It is clear from the record that Carl Caldwell [the father] simply did not comply with the court's order that he pay his son's college expenses. Though some of the evidence supports a finding of emancipation, Carl Caldwell ignored the final decree, in effect forcing his son to abandon his schooling and become a full-time worker, and then sought to have Mark [the son] declared emancipated to his financial benefit.
Caldwell, 579 So.2d at 549.
¶ 32. Our case is significantly different in that here, Jimmy dropped out of school on his own in the ninth grade. His father continued to pay child support thereafter for approximately two years until Jimmy received a degree in diesel mechanics and became employed full-time. Further, in our case, it was the father who purchased the truck and paid the insurance on it, not the son, as was the case in Caldwell. In our case, the son paid rent to his mother while in Caldwell the son did not. Finally, and perhaps most importantly, in Caldwell, the father forced his son into full-time employment by shirking his support obligation. That is not our case.
¶ 33. It is true that here, as in Caldwell, Jimmy continued living at home and the mother cooked, cleaned, and bought groceries as well as did the laundry for him. However, to base a finding that emancipation has not occurred simply because the mother continued to do these things is, in my opinion, a much too liberal reading of Caldwell. After all, some mothers, without compensation, wash, cook, feed and do the laundry for sons way past their majority. In our case, however, the mother was given some compensation or rent. While the mother testified that the amount Jimmy paid was not adequate to cover all of his expenses, I cannot overlook the fact that Jimmy was employed as a diesel mechanic. It is common knowledge that diesel mechanics command substantial compensation for the work they do. The mere fact that the mother in this case chose not to require Jimmy to pay more, if indeed more was needed, should not carry any weight in the emancipation analysis. Some parents exercise extremely poor judgment when it comes to their children, even their grown children.
¶ 34. I conclude with the observation that Jimmy's testimony compels the conclusion that he was essentially free of his mother's constraints, that he did what he wanted to when he wanted to, and that his mother had no say in the matter or, at least, did not attempt to exercise the normal parental controls as would be expected to be exercised in the case of a non-emancipated child.
¶ 35. For the reasons presented, I dissent from the majority's conclusion that the chancellor did not abuse his discretion when he refused to find that Jimmy had been emancipated and that Barbara's claim for back child support is time-barred.
BRIDGES, J. Joins This Separate Opinion.