## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2013-CA-01205-COA

**JEREMY MOSELEY**                                                                 **APPELLANT**

**v.**

**TIFFINY (MOSELEY) SMITH**                                                    **APPELLEE**

DATE OF JUDGMENT:                05/21/2013
TRIAL JUDGE:                            HON. SANFORD R. STECKLER
COURT FROM WHICH APPEALED:   HARRISON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      R. HAYES JOHNSON JR
ATTORNEYS FOR APPELLEE:      THOMAS E. PAYNE
                                            JAMES L. FARRIOR III
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:     AWARDED APPELLEE A $36,036.18
                                            JUDGMENT BASED ON APPELLANT'S
                                            CONTEMPT OF FINAL JUDGMENT OF
                                            DIVORCE
DISPOSITION:                          AFFIRMED - 12/02/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., ROBERTS, CARLTON AND MAXWELL, JJ.

### MAXWELL, J., FOR THE COURT:

¶1.     As part of the property-settlement agreement incorporated in their divorce judgment, Jeremy Moseley was required to hold his ex-wife, Tiffiny Smith, harmless for any debt associated with their 1998 Chevy Camaro, which Moseley got to keep. But Moseley did not meet this requirement. Instead, he had his car debt discharged in federal bankruptcy, which led the bank to go after Smith, who was ordered to pay the remaining debt plus interest.

¶2.     Despite this clear failure to abide by the hold-harmless provision, Moseley argues he

should not have been found in contempt and ordered to reimburse Smith. Citing both his bankruptcy discharge and the statute of limitations, he asserts the hold-harmless provision was no longer enforceable by the time Smith filed her contempt action.

¶3.     We find neither reason creates a barrier to Smith's contempt action. First, the only debt discharged in the bankruptcy was Moseley's debt to the bank. The discharge order did not cover Moseley's *separate* debt to Smith, arising out of the hold-harmless provision in the divorce judgment, as Moseley neither listed this debt on his bankruptcy schedules nor otherwise notified Smith he had filed bankruptcy. Second, Smith's contempt action was timely. Smith's action sought enforcement of a provision of the property-settlement agreement, which by operation of statute became a part of the chancery court's final judgment of divorce.[1] Because her action was "founded on [a] judgment . . . rendered by [a] court of record in this state," the seven-year statute of limitations applied.[2] And because Smith filed for contempt within seven years of learning that the bank was pursuing her for the remaining debt on the Camaro, her contempt complaint was not barred by the statute of limitations.

¶4.     Because we also find the record supports the amount of the contempt judgment, $36,036.18—the amount Smith had to pay the bank, plus attorney's fees and expenses to make her whole—we affirm.

**Procedural History**

¶5.     On September 7, 2000, the Harrison County Chancery Court entered a final judgment

---

[1]  Miss. Code Ann. § 93-5-2(2) (Rev. 2013).

[2]  Miss. Code Ann. § 15-1-43 (Rev. 2012).

2

of divorce for Moseley and Smith. This judgment incorporated their property-settlement agreement, which gave Moseley "exclusive use and possession of the 1998 Chevrolet Camaro" in exchange for requiring he be "solely responsible for the payment of all debt, insurance and taxes associated with said vehicle." Moseley also had "to hold [Smith] harmless for any debt associated with said vehicle."

¶6.     Less than a year later, Moseley, who had moved to Arizona, filed for Chapter 7 bankruptcy in Arizona. Moseley had listed Trustmark National Bank as a secured creditor for "monies owed on 1998 Camaro." But Moseley did not indicate on his bankruptcy schedule that Smith was a co-debtor on the Camaro. Nor does the record show he separately listed Smith as an unsecured creditor, based on the hold-harmless provision, or otherwise notified his ex-wife about the bankruptcy. Moseley received a bankruptcy-discharge order on July 3, 2001.

¶7.     Trustmark eventually sued Smith to collect the remaining debt owed on Moseley's Camaro. While Trustmark filed its collection action on September 19, 2003, Smith was not served with process until September 2006, when she returned from active service in the United States Air Force. On October 4, 2007, Trustmark received a final judgment against Smith for $15,252.96, plus interest accruing from September 19, 2003, at a rate of 11.4%.

¶8.     Three and a half years later, on February 25, 2011, Smith filed a complaint against Moseley for contempt, asserting Moseley had violated the divorce judgment's provision that he would hold her harmless for any debt associated with the Camaro.

3

¶9.    Moseley moved to dismiss.[3] He claimed any obligation related to the Camaro had been discharged by his 2001 bankruptcy. He also asserted Smith's claim was barred by the three-year statute of limitations to enforce contracts or, alternatively, the seven-year statute of limitations to enforce judgments, as their final divorce judgment had been entered eleven years earlier.

¶10.    The chancellor denied Moseley's motion to dismiss on September 6, 2012. In doing so, he found the seven-year statute for actions founded on a judgment applied. And because this action was based on Trustmark's 2007 judgment against Smith, the complaint for contempt was timely. Finally, the chancellor found the discharge of Moseley's debt to Trustmark did not affect his obligation to Smith to hold her harmless for the debt.

¶11.    A week later, Moseley filed a motion to reconsider. In this motion, he suggested the seven-year statute of limitations began running as soon as Smith learned Moseley had filed bankruptcy in 2001 or, at the latest, by the time Trustmark sued her in 2003 and served her with process. Because all of these events occurred more than seven years before she filed her complaint, he insisted it was untimely. Moseley also urged the chancellor to recognize that his debt to Smith, like his debt to Trustmark, had been discharged in bankruptcy, as it was a non-domestic support obligation, which, prior to the 2005 bankruptcy-code

---

[3] Actually, Moseley's initial response was to file a motion to continue, so he could have more time to prepare his bankruptcy-discharge defense. This motion was resolved by agreed order, which gave Moseley additional time "to prepare a brief on the issue of bankruptcy and its effect on contempt." If the chancery court found in favor of Moseley on the bankruptcy issue, Smith agreed her contempt action would be dismissed. But if the court found in favor of Smith on the bankruptcy issue, Moseley agreed to pay her attorney's fees and travel expenses. After this agreed order was signed, but before it was entered, Moseley filed his motion to dismiss.

4

amendments, was dischargeable.

¶12. In her response, Smith asserted that Moseley failed to notify her of his 2001 bankruptcy. And because she had been serving in the Air Force, Trustmark did not serve her with process until March 2006, which was well within seven years of her contempt complaint. Smith renewed her request that the chancellor award her money damages and other relief based on Moseley's "willful and wanton contempt."

¶13. After a hearing, the chancellor denied Moseley's motion for reconsideration and granted Smith's request for contempt-based damages. The chancellor awarded Smith $36,036.18, which included the money and interest Smith had paid Trustmark through wage garnishment, $4,000 for attorney's fees, and $1,337.78 for travel and lodging to attend a hearing in June 2011.

¶14. Moseley then filed a Rule 59 motion to alter or amend, claiming Smith never presented any evidence to support the chancellor's damage award. *See* M.R.C.P. 59(a), (e). But the chancellor never addressed the damages issue, as the motion to alter or amend was dismissed by agreed order.

¶15. Moseley then timely appealed. On appeal, he raises the same defenses of statute of limitations and bankruptcy discharge. He also claims the record did not support the amount of damages awarded to Smith.

**Discussion**

*I.     No Bankruptcy Discharge*

¶16. We begin with the bankruptcy issue. Moseley seems to treat his financial obligations involving the Camaro as a *singular* debt—a debt he owed to Trustmark, which was

5

discharged in his Chapter 7 bankruptcy. But Moseley actually had *two* debts connected to the Camaro—(1) the debt to Trustmark bank to repay the car loan, *and* (2) the contingent debt to Smith, which would arise if Trustmark went after her for repayment of the car loan. While Moseley listed the first debt to Trustmark on his bankruptcy petition, he omitted his second debt to Smith. He also failed to otherwise notify Smith that her rights as a creditor may be affected by his bankruptcy petition. Thus, his debt to Smith was not covered by his bankruptcy discharge. *See In re Hill*, 251 B.R. 816, 821 (Bankr. N.D. Miss. 2000).

### A. Separate Debt to Smith

¶17. In bankruptcy terms, the provision in the property-settlement agreement that Moseley would hold Smith harmless for any debt associated with the Camaro "create[d] a 'new' debt, running solely between the former spouses." *In re Jaeger-Jacobs*, 490 B.R. 352, 357 (Bankr. E.D. Wis. 2013) (citing *In re Schweitzer*, 370 B.R. 145, 150 (Bankr. S.D. Ohio 2007)). Under the version of the United States Bankruptcy Code in effect during Moseley's 2001 bankruptcy, this type of debt was presumptively non-dischargeable as a non-alimony debt "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record[.]" *In re Clark*, 207 B.R. 651, 655 (Bankr. E.D. Mo. 1997) (quoting 11 U.S.C. § 523(a)(15) (1994)).

¶18. But there was a catch. Prior to the 2005 amendments, the creditor ex-spouse had to timely request the bankruptcy court apply the presumption of non-dischargeability to the hold-harmless-agreement debt. *In re Clark*, 207 B.R. at 655. If the creditor ex-spouse failed to do this, then the hold-harmless-agreement debt was discharged. But if the ex-spouse creditor timely intervened, then the debtor ex-spouse would have the burden to overcome

6

the presumption of non-dischargeability.[4]  *Id.* at 655-56 (citing 11 U.S.C. § 523(a)(15)(A), (B) (1994)).

### B.     Lack of Notice

¶19.    In light of this pre-2005 rubric, Moseley argues his debt to Smith had been discharged because she "apparently did not object" to discharge in the Arizona bankruptcy court. Though Moseley carefully tries to avoid the *reason* why Smith did not object, we cannot. Instead, what is apparent from the record is that Smith did not object because she was never notified she needed to object.  And this lack of notice leads to a lack of dischargeability.  *See In re Hill*, 251 B.R. at 821.

¶20.    *Nowhere* does the record indicate Moseley listed Smith as a creditor in his bankruptcy (or even co-debtor on the Trustmark loan), which would have put her on notice to intervene in the bankruptcy to prevent her right to be held harmless from being discharged in the bankruptcy.  Nor did Moseley try to refute Smith's claim that she did not learn about Moseley's bankruptcy until 2006, when she was finally served with Trustmark's lawsuit against her.  Instead, the record shows Moseley never communicated to Smith the fact he was discharging his debt to Trustmark in bankruptcy, even though this action would greatly affect

---

[4]  The debtor could overcome the presumption by establishing either:

[(A)] he or she does not have the ability to pay the debt from his or her income or property that is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . [; or]

[(B)] discharging the debt would result in a benefit that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

*In re Clark*, 207 B.R. at 655 (quoting 11 U.S.C. § 523(a)(15)(A), (B) (1994)).

Smith.

¶21. Discharging his debt to Trustmark did not discharge Smith's obligation to Trustmark as co-debtor. *See In re Jaeger-Jacobs*, 490 B.R. at 357 (citing *In re Clark*, 207 B.R. 651, 657 (Bankr. E.D. Mo. 1997)). This meant Moseley's contingent debt to Smith to hold her harmless became an almost certainty, since she would be the only remaining debtor Trustmark could pursue for repayment. Thus, Smith—had she been notified—would have had every incentive to timely intervene and take advantage of the presumption of non-dischargeability under pre-2005 section 523(a)(15).

¶22. Under federal bankruptcy law, "a debt is not discharged if it was not scheduled in time for the creditor to timely request a determination of dischargeability" and the non-scheduled creditor further lacked "actual knowledge of the bankruptcy case within time to file a complaint[.]" *In re Hill*, 251 B.R. at 821. Moseley has failed to allege, let alone prove, either (1) he listed the hold-harmless debt owed Smith on his bankruptcy petition, or (2) Smith had actual knowledge of his bankruptcy within time to object to her debt being discharged. Thus, we agree with the chancellor that Moseley's debt to Smith based on the hold-harmless agreement was *not* discharged by the 2001 bankruptcy order.

## II. *No Bar by the Statute of Limitations*

¶23. Even if his obligation to Smith was not discharged in bankruptcy, Moseley claims it was still unrecoverable due to the statue of limitations. The application of the statute of limitations is a question of law, which we review de novo. *ABC Mfg. Corp. v. Doyle*, 749 So. 2d 43, 45 (¶10) (Miss. 1999). Though we do not defer to the chancellor's statute-of-limitations ruling, we do reach the same conclusion—the seven-year statute of limitations

8

applied, and Smith timely filed within seven years.

## A. Seven-Year Statute of Limitations Applied

¶24. Smith based her action on a provision in the property-settlement agreement. Since a property-settlement agreement is a contract, Smith argues the three-year statute of limitations for contracts should apply. *See* Miss. Code Ann. § 15-1-49 (Rev. 2012). But a property-settlement agreement, though "quasi-contractual," is not simply a contract. *Varner v. Varner*, 666 So. 2d 493, 497 (Miss. 1995). Under Mississippi's irreconcilable-differences statute, Moseley and Smith's property-settlement agreement, upon approval by the chancellor, became incorporated into the final judgment of divorce. *See* Miss. Code Ann. § 93-5-2(2) (Rev. 2013). Section 93-5-2(2) "inject[ed] the court into the process." *Grier v. Grier*, 616 So. 2d 337, 340 (Miss. 1993). As a result, the property-settlement agreement "is a court order." *Varner*, 666 So. 2d at 497.

¶25. For this reason, Smith's contempt action was not for breach of contract. Rather, her action was to enforce a judgment. And under Mississippi Code Annotated section 15-1-43, "[a]ll actions founded on any judgment or decree rendered by any court of record in this state" can be "brought within seven (7) years next after the rendition of such judgment or decree[.]" Miss. Code Ann. § 15-1-43 (Rev. 2012).

¶26. The Mississippi Supreme Court has consistently held that this seven-year statute applies to actions to recover past-due alimony and child support, with the seven years starting from the date the alimony or support became vested, and not the date the judgment awarding alimony was entered. *E.g., Ladner v. Logan*, 857 So. 2d 764, 772 (¶¶26-27) (Miss. 2003) (past-due child support); *Rubisoff v. Rubisoff*, 242 Miss. 225, 235, 133 So. 2d 534, 537

9

(1961) (past-due alimony). In light of this, courts assumed the seven-year statute also applied to actions to recover property awarded in an irreconcilable-differences divorce judgment. *E.g., Carite v. Carite*, 841 So. 2d 1148, 1151 (¶5) (Miss. Ct. App. 2002) (citing *White v. Abel*, 802 So. 2d 98, 102 (¶12) (Miss. Ct. App. 2001)). In fact, in *Carite*, no one questioned that the seven-year statute of limitations applied. While the statute of limitations was raised as a defense, the only question was *when* did the seven-year statute begin to run, not *if* it applied instead of the three-year statute of limitations. *Id.*; *see also Nicholas v. Nicholas*, 841 So. 2d 1208, 1212 (¶10) (Miss. Ct. App. 2003) (applying the seven-year statute of limitations to a non-alimony provision in the property-settlement agreement).

¶27. But four years after *Carite*, this court made a distinction between a claim to recover past-due alimony and a claim that a non-alimony provision in the property-settlement agreement had been violated. *D'Avignon v. D'Avignon*, 945 So. 2d 401, 408 (¶24) (Miss. Ct. App. 2006). Because the supreme court had held that a property-settlement agreement must be *interpreted* like any other contract, this court concluded a property-settlement agreement must be *enforced* like a contract too. So this court said the three-year statute of limitations applied, even though property-settlement agreements are incorporated into the chancellor's judgment. *Id.* (citing *West v. West*, 891 So. 2d 203, 210 (¶13) (Miss. 2004)). Moseley asks us to draw the same conclusion here and apply *D'Avignon* to find Smith's action was barred because it was not filed within three years.

¶28. But in revisiting this issue, we are confronted with section 93-5-2(2) and the supreme court cases that have discussed the effect of that statute on the *enforceability* of property-settlement agreements. And as the supreme court has said, "there is more at work than

10

general contract law." *Grier*, 616 So. 2d at 340.

¶29.    Under section 93-5-2(2), a property-settlement agreement is not enforceable unless approved by the chancellor and incorporated into the divorce decree. *E.g., Bell v. Bell*, 572 So. 2d 841, 844 (Miss. 1990); *Sullivan v. Pouncy*, 469 So. 2d 1233, 1234 (Miss. 1985); *see also Ash v. Ash*, 877 So. 2d 458, 460 (¶11) (Miss. Ct. App. 2003) (citing *Joiner v. Joiner*, 739 So. 2d 1043, 1045 (¶¶9-12) (Miss. Ct. App. 1999)). In other words, what makes a property-settlement agreement enforceable is not that it is a contract, but rather that it is a "court-approved contract"—one that "become[s] a part of the decree and enforceable as such as though entered by the court following contested proceedings." *Bell*, 572 So. 2d at 844.

¶30.    So, unlike a breach-of-contract action that requires the plaintiff to first prove there was an enforceable contract, to enforce a property-settlement agreement, the ex-spouse merely has to point to the divorce judgment. Though property-settlement provisions differ from alimony and child-support provisions in the sense they are non-modifiable, they are nonetheless enforceable as part of the divorce judgment. Thus, we abandon our previous conclusion in *D'Avignon*, 945 So. 2d at 408 (¶24), and instead hold that the seven-year statute of limitations for actions founded on judgments applies to *all* provisions in a property-settlement agreement incorporated into a divorce judgment, not just those that pertain to alimony and child support.[5] *See* Miss. Code Ann. § 15-1-43.

¶31.    Because Smith's action is to enforce a court-entered judgment, and not merely a

---

[5] Of course, we maintain the supreme court's long-stated principle that "provisions of a property[-]settlement agreement executed prior to the dissolution of marriage must be *interpreted* by courts as any other contract." *West*, 891 So. 2d at 210 (¶13) (emphasis added).

private contract, she had seven years to file her contempt action once the seven-year statute of limitations began to run.

### B. Smith's Contempt Action Was Timely Filed

¶32. This leads to Moseley's next argument—that even with seven years to file, Smith still waited too long. He claims that, because the divorce judgment was entered in September 2000, Smith had to file her action by September 2007.

¶33. But "[t]he statute of limitations on a right to compel a monetary judgment in a domestic action begins to run on the date on which the payment is *due and payable*." *Carite*, 841 So. 2d at 1151 (¶5) (emphasis added) (citing *White*, 802 So. 2d at 102 (¶12)). For example, the seven-year statute of limitations to recover alimony payments runs from the month each payment vested, not the date of divorce. *E.g.*, *Schaeffer v. Schaeffer*, 209 Miss. 220, 226, 46 So. 2d 443, 444 (1950); *Nicholas*, 841 So. 2d at 1212 (¶11). We recognize that in most cases property awards become due and payable when the divorce judgment is entered. But here, at the time of their divorce, Smith did not yet have a vested right to indemnification from Moseley. It was only when Trustmark went after her for the unpaid Camaro debt that Moseley's obligation to hold Smith harmless became "due and payable," triggering Smith's right to enforcement.

¶34. So we find the earliest Smith could have sought enforcement of the hold-harmless provision—and the earliest possible date the seven-year statutory period could have begun—was in September 2006. This was when Smith was served with process and suffered

her first harm based on the unpaid Camaro debt.[6]  As Smith filed for contempt less than seven years from this date, we find her action was not barred by section 15-1-43's seven-year statute of limitations.

### III.    Contempt Judgment

¶35.    Finally, Moseley argues that even if Smith's action was timely, it still must be sent back to the chancery court because the record does not support the amount of damages awarded.   But we see no reason to reverse.

¶36.    The chancellor ordered Moseley to pay Smith $36,036.18—$30,698.40 to reimburse Smith for having her wages garnished to satisfy the Trustmark judgment, $4,000 in attorney's fees, and $1,337.78 in travel expenses.  The $30,698.40 figure was based on the undisputed amount of the Trustmark award, to which Smith attested in her affidavit attached to her contempt complaint.  Smith had been ordered to pay the bank $15,262.96, plus 11.4% interest that had been accruing since September 2003.  Such an interest rate no doubt doubled the amount Smith was obligated to pay in 2013, the time she obtained her contempt judgment.

¶37.    We also find the $4,000 award for attorney's fees and $1,337.18 in travel expenses was reasonable.  In contrast to other family-law actions, where attorney's fees may be awarded based on need, attorney's fees in contempt actions are awarded "to make the

---

[6] Though the record is not entirely clear, this also appears to be the date Smith returned from active military service.  And under the federal Servicemembers Civil Relief Act, active military service automatically tolls the running of any period of limitations. 50 App. U.S.C. § 526(a) (2012); *see also In re Puckett*, 137 So. 3d 1264, 1273-74 (La. Ct. App. 2014).  So even if the seven-year limitations period were triggered earlier than September 2006, this period would have been tolled during the time Smith actively served.

plaintiff whole." *Bounds v. Bounds*, 935 So. 2d 407, 412 (¶18) (Miss. Ct. App. 2006) (quoting *Mabus v. Mabus*, 910 So. 2d 486, 490 (¶13) (Miss. 2005)). "When a party is held in contempt for violating a valid judgment of the court, then attorney's fees *should be* awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Id.* (emphasis added). Also here, two years before the chancellor's final disposition, Moseley had entered an agreed order in which he assumed responsibility for Smith's attorney's fees and travel expenses in the event she prevailed.[7] So there is no doubt that awarding attorney's fees and expenses to make Smith whole was proper.

¶38. While there is no itemized bill of the legal services Smith's attorney had rendered, the record shows the amount of work he performed filing her contempt action, responding to Moseley's motions, and attending a hearing on Moseley's motion to reconsider. Under Mississippi Code Annotated section 9-1-41 (Rev. 2014), "[i]n any action in which a court is authorized to award reasonable attorneys' fees," such as this contempt action, the party seeking fees does not have "to put on proof as to the reasonableness of the amount sought." Instead, the court "shall make the award based on the information already before it and the court's own opinion based on experience and observation[.]" *Id.* Based on the information before him, the chancellor determined a $4,000 attorney's fee award was reasonable. And we see no abuse of discretion in this decision. The record also does not contain an itemized list of travel expenses. But it does show Smith was living in Illinois at the time she filed for contempt. In light of the fact she had to travel to Harrison County, Mississippi, to enforce the court's order, the award of $1,337.18 for travel expenses is reasonable.

---

[7] *See* note 3, *supra*.

¶39. Because we find no abuse of discretion in the chancellor's ordering Moseley to pay

Smith $36,036.18, we affirm.

¶40. **THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**