# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01187-SCT

*JON A. SWARTZFAGER*

*v.*

*THOMAS R. SAUL*


| | |
|---|---|
| DATE OF JUDGMENT: | 07/08/2015 |
| TRIAL JUDGE: | HON. HOLLIS McGEHEE |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | GLENN S. SWARTZFAGER |
| ATTORNEYS FOR APPELLEE: | CORY NATHAN FERRAEZ |
| | SAMUEL STEVEN McHARD |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART AND REMANDED - 02/16/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. Thomas R. Saul and Jon A. Swartzfager initially reached a verbal agreement for Saul's purchase of a piece of property located within a larger tract of land Swartzfager owned. But another person came along and offered Swartzfager a significant sum to buy the whole tract. So Swartzfager approached Saul and asked if he would forego their original land deal and in exchange accept a separate parcel within a different tract of land. Saul agreed to Swartzfager's new offer, and Swartzfager reduced their agreement to writing—stating that for "good and valuable consideration" already received, he would

transfer the second parcel to Saul upon request. However, Swartzfager later backed out and never transferred any land to Saul.

¶2. Saul filed suit against Swartzfager seeking damages and specific performance. The chancellor found a valid contract existed between Saul and Swartzfager, and awarded him damages, attorney's fees, and prejudgment interest. After review, this Court finds the chancellor correctly ruled that Saul and Swartzfager had a contract. And even absent the contract, Saul proved he detrimentally relied on Swartzfager's offers and promises. So Swartzfager is equitably estopped from denying the land deal. Additionally, we find the chancellor's awards for intentional infliction of emotional distress and attorney's fees are supported. But the chancellor did err in awarding prejudgment interest, because Saul did not plead a request for prejudgment interest. We thus affirm in part, reverse in part, and remand for a recalculation of damages and attorney's fees that does not include prejudgment interest.

**Background Facts and Procedural History**

¶3. Swartzfager, an attorney in Jones County, approached Thomas Saul in January 2007 at his home. He offered Saul an opportunity to purchase acreage of his choosing at a low price, in a large tract of land. Swartzfager owned approximately sixty-three acres near Saul's home, which he planned to develop into a subdivision—Deerfield. Swartzfager wanted Saul, who was a Mississippi highway patrolman, to be one of the first homeowners so the neighborhood "would have a law enforcement presence." Saul agreed and had a five-acre tract surveyed near the center of the development. He presented the survey to Swartzfager and tried to close on the transaction numerous times. But Swartzfager either did not respond

2

or delayed delivering closing documents. Meanwhile, relying on Swartzfager's representations, Saul and his family sold their home and planned to build a "shop" on the property. Saul intended to live in the shop with his family while his new house was under construction.

¶4.   With the closing on their own home approaching and no closing in sight for the Deerfield acreage, Saul and his family were forced to purchase and live in a mobile home. They also had to pay to store their belongings. Saul continued to ask Swartzfager to close on the property. But Swartzfager dodged him. During this time, Swartzfager was ironing out a separate proposal with a man named Bill Jenkins. And Jenkins eventually offered to purchase the entire sixty-three acre Deerfield tract. The offer would net Swartzfager a substantial profit.

¶5.   Swartzfager first floated the idea of selling Jenkins the tract, less Saul's five acres. But eventually he approached Saul with a separate proposal. He asked Saul if he would relinquish any interest in the five acres at Deerfield, and in exchange accept six acres in the Grand View Estates subdivision. Saul agreed to this proposal. And on June 7, 2007, Swartzfager drafted a basic agreement to this effect on his letterhead and signed it.

¶6.   In his letter, Swartzfager wrote:

> I, Jon A. Swartzfager, do hereby contract to sell to Thomas "Sonny" Saul and wife six acres of land of the twelve acres belonging to me within Grandview subdivision on the Sharon Moss road in the Second Judicial District of Jones County, Miss. This contract is made after I have received good and valuable consideration from Mr. Saul and the transfer of property by warranty deed from me to him is to take place within 10 days of a request for same by Mr. Saul.

3

/s/ Jon A. Swartzfager
Dated: June 7, 2007

¶7.     Saul visited the Grand View Estates property and picked the northern six acres.  He then drew a map of the chosen land.  With both the drawing and agreement in hand, Saul made requests for Swartzfager to close on the Grand View Estates property.  But again, Swartzfager either did not respond or delayed.  So, on August 23, 2007, Saul filed suit against Swartzfager, his wife Helen, and Helen's real estate company, Pinehurst Realty, LLC. Saul sought to enforce his agreement with Swartzfager, claiming breach of contract, equitable estoppel, and promissory estoppel.  And he requested related damages.  Saul filed his complaint in Jones County, and it was assigned to Chancery Judge Franklin McKenzie Jr.  But Judge McKenzie recused, citing conflicts, and requested a special chancellor be appointed.  This Court appointed Judge James Thomas Jr. on September 5, 2007.

¶8.     After conducting some initial discovery, the parties met with Judge Thomas and prepared a scheduling order for the remaining discovery, which he signed on July 1, 2008. By August 26, 2008, Saul filed for summary judgment.  Soon after, the defendants responded and likewise filed a motion for summary judgment.  Judge Thomas considered the arguments and granted partial summary judgment to Saul on February 12, 2009.  In doing so, Judge Thomas declared the June 7, 2007 writing by Swartzfager a valid, enforceable contract. Judge Thomas then set the matter for trial.  But before he could conduct the trial, Judge Thomas passed away.  And on March 15, 2011, this Court appointed Judge Ray H. Montgomery to hear the case.  On June 29, 2011, Judge Montgomery held a hearing on all pending motions and granted summary judgment to Helen Swartzfager and Pinehurst Realty,

4

LLC—dismissing all claims against them. This left only the claims against Jon Swartzfager individually.

¶9. The parties then conferenced with Judge Montgomery and, by agreed order, the matter was set for a November 29, 2012 trial. The trial took place over November 29, 2012; January 25, 2013; and April 8, 2013. But Judge Montgomery also died before rendering a final decision. And on December 19, 2014, this Court appointed Judge Hollis McGehee to preside over the case. Judge McGehee met with the parties and, after discussion, the parties agreed that Judge McGehee should review the existing record and render a decision. The parties agreed this was a better course than conducting an entirely new trial. Judge McGehee entered an agreed order memorializing this method for handling the case.[1]

¶10. On May 6, 2015, Judge McGehee mailed the parties a letter opinion and decision. He asked Saul's attorney to incorporate the rulings into a final opinion and judgment. On May 21, 2015, the final memorandum and judgment was signed by Judge McGehee and acknowledged by both attorneys. Judge McGehee found Saul had given Swartzfager valuable consideration for the Grand View Estates property by relinquishing any interest in the Deerfield property. He also found Swartzfager's testimony supported this, along with his apparent authority to act on his wife's behalf. Judge McGehee held Saul had relied on Swartzfager's original and "substitute" offers and promises, resulting in the sale of his family

---

[1] The record also contains an email from Judge McGehee to the parties confirming their desire to have him review the record to reach a final disposition, rather than conduct a new trial.

5

home, moving his family to a mobile home, and requiring he secure storage for many of their personal belongings.

¶11.   As the judge saw it, "the June 7, 2007 alternate offer was, in essence, a pay back or payment to [Saul] and his wife" for the troubles they suffered while acting "in full detrimental reliance on [Swartzfager's] unsolicited offers and promises." Judge McGehee described these representations as "[p]romises and offers which [Swartzfager] fully failed to perform on for the purpose of making a substantial profit."

¶12.   Judge McGehee found the June 7, 2007 letter clearly stated Swartzfager "was giving the six acres to [Saul] and the consideration was [Saul's] foregoing his right to buy five acres of his choosing in Deerfield which facilitated the sale of the sixty three acres in Deerfield which greatly benefitted [Swartzfager]."

¶13.   Based on Swartzfager's intentional breach, Judge McGehee found Saul was entitled to monetary damages—$53,400 for breaching the contract, plus $79,098.81 in prejudgment interest.[2] The chancellor also held Swartzfager liable for $22,785 in losses and costs incurred by Saul, as a "direct and proximate result of the egregious actions and omissions by [Swartzfager]." And he awarded Saul $50,000 for his emotional distress. All tallied, the judgment against Swartzfager totaled $205,283.81.

¶14.   Furthermore, because of Swartzfager's actions, Judge McGehee found a separate hearing on attorney's fees was necessary. Saul filed a memorandum in support of attorney's fees. But Swartzfager did not. And after an unsuccessful conference on the issue, the parties

---

[2] Judge McGehee computed prejudgment interest at eight percent per annum from July 13, 2007 until May 13, 2015—or 7.8356 years.

6

filed a joint motion to determine attorney's fees. At that point, Judge McGehee ruled on the matter. Both parties acknowledged his amended memorandum opinion and judgment, which was entered on July 8, 2015. In it, he found Swartzfager's actions were so egregious and intentional that Saul was entitled to attorney's fees in the amount of $88,362.40—raising the total judgment against Swartzfager to $293,646.21.

¶15. Swartzfager now appeals. He claims the chancellor erred by—(1) finding the June 7, 2007 writing a valid and enforceable contract; (2) not, alternatively, finding the June 7, 2007 writing was an undelivered promise for a gift; (3) awarding damages for emotional distress; (4) awarding attorney's fees; and (5) improperly awarding prejudgment interest.

**Analysis**

*Standard of Review and Judicial Estoppel*

¶16. We will not disturb a chancellor's decision unless it was manifestly wrong, clearly erroneous, or applied the wrong legal standard. *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶ 21) (Miss. 2000) (citing *Bank of Mississippi v. Hollingsworth*, 609 So. 2d 422, 424 (Miss. 1992)). But questions of law are reviewed de novo. *Id*. (citing *Consol. Pipe & Supply Co. v. Colter*, 735 So. 2d 958, 961 (Miss. 1999)).

¶17. While these standards typically apply to a chancellor's decisions, Swartzfager suggests our review of his appeal should differ. He argues a de novo review of all issues is required because Judge McGehee based his decision on testimony from hearings before previously assigned chancellors. And he insists these chancellor's findings should be given no deference. We disagree.

¶18.    We find Swartzfager is judicially estopped from taking this new approach.  A litigant is "estopped from taking a subsequent position if (1) the position is inconsistent with one previously taken during litigation, (2) a court accepted the previous position, and (3) the party did not inadvertently take the inconsistent positions."  *Clark v. Neese*, 131 So. 3d 556, 560 (¶ 16) (Miss. 2013) (citing *Kirk v. Pope*, 973 So. 2d 981, 991 (Miss. 2007) (quoting *In re Superior Crewboats, Inc.*, 374 F. 3d 330, 335 (5th Cir. 2004)).  The parties and Judge McGehee specifically discussed whether to hold a new trial.  And the parties agreed Judge McGehee could, and should, render a decision based on the existing record rather than hold a new trial.  Indeed, the record contains Judge McGehee's email to the parties confirming this approach, along with an agreed order memorializing the agreement, signed by the chancellor and parties.  So Swartzfager is estopped from now claiming that, because the final decision did not favor him, this Court should apply a de novo review.

¶19.    We also find no merit to Swartzfager's argument that the chancellor's findings be given no deference because they are verbatim adoptions of Saul's proposed findings.  We find that Judge McGehee made his own findings, with few exceptions, based on the record.[3] It is true that Judge McGehee adopted findings from the previous chancellors from prior partial summary judgment rulings, but if Swartzfager takes issue with these particular findings he should have appealed the summary judgment rulings.  And the record shows Swartzfager, in many instances, either agreed or conceded to Saul's proposed findings of fact

---

[3] Judge McGehee also adopted unchallenged findings from the previous chancellor's summary judgment rulings.

8

and conclusions of law, or simply did not provide proposed findings or conclusions of his own. Heightened scrutiny by this Court is not required.

## I. 2007 Writing as a Contract

¶20. Turning to the merits, Swartzfager first attacks his written agreement. He argues the June 7, 2007 writing is defective and does not survive the Statute of Frauds as an enforceable contract. He also claims that because the contract does not describe the Grand View Estates land with sufficient specificity or include a price, it fails as a matter of law.

¶21. Mississippi's Statute of Frauds requires a contract for the sale of land to be in writing and "signed by the person to be charged therewith . . . ." Miss. Code Ann. § 15-3-1(c) (Rev. 2012). But "[t]hese written memoranda need not necessarily be embodied in one writing: there may be one or more, if they are connected by physical contact, by reference, or by necessary connection." *Fisher v. Kuhn*, 54 Miss. 480, 483 (1877) (citing *Jelks v. Barrett*, 52 Miss. 315, 322-23 (1876)). Swartzfager himself wrote and signed the June 7, 2007 letter, in which he agreed to convey to Saul six acres of the Grand View Estates property within ten days of Saul's request to close. Swartzfager then asked Saul to choose which six acres he wanted. Saul complied and requested the northern six acres of the Grand View Estates property. He also drew a map of this area. Saul then combined his drawing with Swartzfager's writing and delivered the documents to Swartzfager's office, with a request to close. Together, the June 7, 2007 writing and Saul's mapped out description—which was made at Swartzfager's request—formed an agreement for the sale of the northernmost six acres of Swartzfager's property within Grand View Estates.

9

*A.    Description of the Land*

¶22.    Swartzfager next takes issue with the map.  He argues Saul's map does not sufficiently describe the chosen property.  Swartzfager is correct that "[t]he description of the land in a contract for the sale of real property is unquestionably an essential term that must be stated with specificity."  ***Woodruff v. Thames***, 143 So. 3d 546, 554 (¶ 19) (Miss. 2014) (citations omitted).  But generally, a description is sufficient if a surveyor can locate the boundaries by following the description.  *See **Trotter v. Gaddis & McLaurin, Inc.***, 452 So. 2d 453, 456 (Miss. 1984); ***Overby v. Cavanaugh***, 434 So. 2d 1365, 1366 (Miss. 1983).  Moreover, a description may still be considered sufficient, though it contains inaccuracies, if the property could be located with some certainty.  *See **Stockstill v. Gammill***, 943 So. 2d 35, 41-42 (¶ 11) (Miss. 2006).  Swartzfager's June 7, 2007 letter identifies the selected land as "six acres of land of the twelve acres belonging to me in the Grandview subdivision on the Sharon Moss Road in the Second Judicial District of Jones County, Mississippi."  He identified half of a twelve-acre parcel, within a specific subdivision, in a specific judicial district of Jones County.  Swartzfager then asked Saul to pick which half of the twelve-acre parcel he wanted, which Saul did.  Saul mapped the northern half along the adjacent neighbor's property line.  He also included several roads and noticeable boundaries, as well at the map's orientation.  Swartzfager had no misunderstanding about the chosen land.  And this description is more than sufficient for a surveyor to locate the property's boundaries.  Thus, the chancellor did not err in finding the land was sufficiently described.

*B.    Price of the Land*

¶23.    Swartzfager also insists his writing failed for not including a purchase price.  He relies heavily on *Duke v. Whatley*, arguing the failure to include a price is a fatal defect which renders the June 7, 2007 writing an indication of intent rather than a contract.  *Duke v. Whatley*, 580 So. 2d 1267, 1273-74 (Miss. 1991) (collecting authorities).  We note, however, that *Duke* and the other cases cited by Swartzfager largely concern contracts to enter a later contract, or agreements for future agreements—something we do not face here.  By Swartzfager's own written words, he had "received good and valuable consideration" and would transfer the property to Saul within a specified time, upon request.  Swartzfager expressed, in writing, that consideration had already been exchanged.  He likewise expressed in writing his readiness to convey the six acres.  Therefore, Swartzfager's June 7, 2007 writing did not fail to include a price *to be paid*.  It just did not include the price *already paid*—and that is where the ambiguity lies.  And where contracts "evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence."  *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 112 (Miss. 2005) (citations omitted).

¶24.    Judge McGehee recognized this maxim and considered Swartzfager's own testimony and statements, along with Saul's.[4]  And he found that Swartzfager agreed he was going to convey the six acres in Grand View Estates to Saul in exchange for Saul's consent to the sale of the entire Deerfield property to Bill Jenkins.  Swartzfager only began to back out from this agreement when Saul "picked property he shouldn't have" and heard rumors Saul was going

---

[4] Judge Thomas granted partial summary judgment in favor of Saul, finding that the June 7, 2007 writing was a contract.

to flip the property.[5]  But Judge McGehee did not find any such limitations or restrictions in the June 7, 2007 agreement.  And Swartzfager's own testimony established he had agreed that in exchange for Saul's consent to the Deerfield sale, he would transfer six acres of Saul's choosing to him.  We find the record supports the trial court's finding that consideration had already changed hands—specifically Saul's forbearance of any claim to the Deerfield property.

### C. Contract Ambiguities and Vagaries

¶25.    A consistent rule of contract construction is that "when the terms of a contract are vague or ambiguous, they are always construed more strongly against the party preparing it." *Stampley v. Gilbert*, 332 So. 2d 61, 63 (Miss. 1976) (citing *Globe Music Corp. v. Johnson*, 226 Miss. 329, 84 So. 2d 509 (1956), and *Love Petroleum Co. v. Atlantic Oil Producing Co.*, 169 Miss. 259, 152 So. 829 (1934)).  Here, Swartzfager proposed and drafted the agreement.  He is an attorney, knowledgeable of the Statute of Frauds, who held a superior position to Saul in terms of legal expertise and experience.  We find the chancellor did not err in holding ambiguities or vagaries against Swartzfager as drafter.  Nor was the chancellor wrong to find the June 7, 2007 writing a valid, enforceable contract.

### D. Equitable Estoppel

¶26.    Still, even if we disagreed with the finding that a contract existed, Saul alternatively pled equitable estoppel.  And the chancellor found that Saul did, in fact, detrimentally rely on Swartzfager's representations.  So Swartzfager is estopped from denying the land deal.

---

[5] Swartzfager's testimony is the only source, in the record, of the claim that Saul intended to "flip" the property.

12

¶27. Equitable estoppel prevents a party from denying any material fact, induced by his or her words or conduct, upon which another person relied and changed his or her position and would suffer injury if the denial or contrary assertion was allowed. *See Koval v. Koval*, 576 So. 2d 134, 137 (Miss. 1991). The doctrine is based on "public policy, fair dealing, good faith and justice[.]" *Id*. (citations omitted). It is premised on "the belief that a person should do what he says he will do in situations where another party is injured by reliance on the first party's representations." *Id*. at 138. And its aim is to "forbid one to speak against his own act, representations, or commitments to the injury of one to whom they were directed and who reasonably relied thereon." *Id*. at 137 (citations omitted).

¶28. To prove equitable estoppel, a party must show he or she has changed position, to his or her detriment, in reliance upon the conduct of another. *PMZ Oil v. Lucroy*, 449 So. 2d 201, 206 (Miss. 1984) (citing *Birmingham v. Conger*, 222 So. 2d 388, 392-93 (Miss.1969); *Ivy v. Grenada Bank*, 401 So. 2d 1302, 1303 (Miss.1981); and *Thomas v. Bailey*, 375 So. 2d 1049, 1052 (Miss.1979)). It requires we consider whether "it would be substantially unfair to allow a person to deny what he has previously induced another to believe and take action on." *Id*.

¶29. Judge McGehee found Saul had detrimentally relied on Swartzfager's promises about both the Deerfield and Grand View Estates properties—"Promises and offers which [Swartzfager] fully failed to perform on for the sole purpose of making a substantial personal profit." As Judge McGehee saw it, Swartzfager acted "with total disregard for the welfare

13

of [Saul and his wife]." And "their entire lives" were "disrupted" by "[Swartzfager's] unsolicited offers and promises." Our review shows the chancellor's findings are supported.

¶30. Saul detrimentally relied on Swartzfager's inducements—most notably selling his home. Furthermore, Swartzfager was able to negotiate his deal with Bill Jenkins, without interference or objection from Saul, only because he represented to Saul that, in exchange for his approval, Swartzfager would convey to him the Grand View Estates property. And Saul relied on these representations, acting unquestionably to his detriment. Thus, Swartzfager should not reap "the benefits of a contract while simultaneously trying to avoid its burdens." *Cmty. Bank of Miss. v. Stuckey*, 52 So. 2d 1179, 1183 (¶ 25) (Miss. 2010) (citations omitted). So, even if there was no enforceable contract, Swartzfager is estopped from denying the Grand View Estates deal he struck with Saul.

## II. 2007 Writing as a Promise

¶31. Swartzfager also tries to shirk his deal with Saul by characterizing the June 7, 2007 writing as an inter vivos gift—a gift he never delivered. Swartzfager suggests that, because there was no written agreement between himself and Saul for the Deerfield property, Saul could not legally forbear any rights as consideration for the June 7, 2007 contract.

¶32. Generally, forbearance to assert a claim that is unenforceable at law or equity is not sufficient consideration. *Stanley v. Sumrall*, 167 Miss. 714, 147 So. 786, 788 (1933) (collecting authorities). This rule however is not absolute, since ". . . forbearance to assert a claim which might reasonably be doubtful is sufficient consideration to support a promise." *Id*.

14

¶33. Swartzfager is correct that there was no written agreement between himself and Saul for the Deerfield property. And the Statute of Frauds requires a written contract for land. *See Milam v. Paxton*, 160 Miss. 562, 134 So. 171, 172 (1931) (a claim for specific performance to convey land requires a written contract). Again, however, Swartzfager is equitably estopped from denying his later Grand View Estates deal with Saul. Equitable estoppel "is a well-established exception to our statute of frauds." *PMZ Oil Co.*, 449 So. 2d at 206. Furthermore, the Statute of Frauds does not bar enforcement "of that to which a party has agreed." *Id*. (citing *Martin v. Franklin*, 245 So. 2d 602 (Miss. 1971), and *Sanders v. Dantzler*, 375 So. 2d 774, 776-77 (Miss. 1979)). While Saul could not prosecute a claim, successfully, for specific performance, there are other potential remedies that he could forbear as consideration. *See Powell v. Campbell*, 912 So. 2d 978 (Miss. 2005); *C. E. Frazier Constr. Co., Inc. v. Campbell Roofing & Metal Works, Inc.*, 373 So. 2d 1036 (Miss. 1979). For example, like equitable estoppel, this Court stated in *Frazier* that promissory estoppel "may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon, and if a refusal to enforce it would be virtually to sanction the perpetuation of fraud or would result in other injustice." *Frazier*, 373 So. 2d at 1038 (quoting 28 Am. Jur. 2d *Estoppel and Waiver*, § 48 (1966)).

¶34. So we find Swartzfager's argument really holds no water. Saul could have asserted equity rights, certainly more than a mere "dispute or controversy" between himself and Swartzfager over the Deerfield property. *See Gunning v. Royal*, 59 Miss. 45, 46 (1881).

And the fact that Saul forbore any claim or suit, regardless of its likelihood of success, to the Deerfield land is sufficient consideration for the June 7, 2007 writing concerning the Grand View Estates property. Second, Swartzfager's own hand-picked wording in the June 7, 2007 writing acknowledges that "[t]his contract is made *after I have received good and valuable consideration . . . .*" (emphasis added). Thus, Swartzfager's own written words express his then-held view that the consideration was both already received and valuable. For these reasons, we find the chancellor did not err by rejecting Swartzfager's notion that the June 7, 2007 writing was merely an undelivered gift inter vivos. And again, even if the chancellor had erred in this view, at a minimum Saul proved his alternative claim of equitable estoppel.

### III. Emotional Distress

¶35. Swartzfager next contends the chancellor wrongly awarded damages for intentional or negligent infliction of emotional distress. He asserts Saul did not make a prima facie case for either claim. But the chancellor disagreed, and so do we.

¶36. Judge McGehee specifically found Swartzfager's intentional actions surrounding the agreement caused Saul significant emotional distress. There is no indication that damages were awarded for negligent infliction of emotional distress, so we need not address that argument. We limit our discussion to intentional infliction of emotional distress.

¶37. Typically, to support a claim for intentional infliction of emotional distress, a "defendant's conduct must be 'wanton and wilful.'" *Speed v. Scott*, 787 So. 2d 626, 630 (¶ 17) (Miss. 2001) (quoting *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995)). It must be the type of conduct that "'would evoke outrage or revulsion'" *Id*.

16

The acts must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id*. at (¶ 18) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996) (citations omitted)). This no doubt is a high bar, but as Saul also notes, this Court apparently has "moved away from this requirement" for breach of contract claims. *See Univ. of S. Miss. v. Williams*, 891 So. 2d 160, 172 (¶ 30) (Miss. 2004) (citations omitted).

¶38. When the claim is based on a contract, a plaintiff must show that (1) the emotional distress was a foreseeable consequence of the particular breach-of-contract and (2) that he or she actually suffered emotional distress; plaintiffs need not prove any physical manifestation. *Id*. at 172-73 (¶ 31). However, the plaintiff must show specific suffering during a specific time frame; generalizations are not sufficient. *Id*.

¶39. Saul testified that during the six to seven months following the collapse of his dealings with Swartzfager, both he and his wife were on "an emotional roller coaster." Saul felt betrayed, helpless, angry, and disappointed. He testified about the significant stress his family endured by moving from a house to a much smaller mobile home.[6] These events certainly would cause a reasonable person great distress. Still, even if Saul's suffering and the disruption of his family's life are categorized as mere discomfort, "testimony concerning 'discomforts' . . . take[s] on a different importance when viewed in light of the event which

---

[6] Saul also testified that during this time he was diagnosed with cancer, and his wife was diagnosed a few years later, and that fighting cancer was more difficult and stressful while they lived in the mobile home and had their belongings in storage.

engendered the mental anguish." *Id*. at 173 (¶ 32) (citing *Whitten v. Cox*, 799 So. 2d 1, 10-11 (Miss. 2000)). And here, the chancellor described the events, particularly Swartzfager's conduct, as "self-serving greed from start to finish"—something akin to "a portrait of egregious behavior." He found Swartzfager's acts "were clearly and intentionally made in self-serving bad faith . . . with total disregard for the welfare of Sonny and Gail."

¶40. We find support for the chancellor's finding that Swartzfager's behavior was repetitive and egregious, resulting in the disruption of Saul's and his wife's lives, with the sole result being Swartzfager's financial benefit. Saul's emotional distress clearly was a foreseeable result of Swartzfager repeatedly breaking his promises. And under our deferential review, regardless of whether Saul's emotional-distress claim is considered in the contractual context or in the traditional sense, nothing in the record suggests the chancellor erred by finding Swartzfager's intentional and egregious acts caused Saul emotional distress. We thus find the award is factually supported.

## IV. Attorney's Fees

¶41. Swartzfager further complains the chancellor incorrectly awarded attorney's fees to Saul. He argues that, absent statutory or contractual authority, attorney's fees are warranted only where punitive damages also are proper. *See Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 486 (¶ 40) (Miss. 2002) (citing *Aetna Cas. & Sur. Co. v. Steele*, 373 So. 2d 797, 801 (Miss. 1979); *Smith v. Dorsey*, 599 So. 2d 529, 549-50 (Miss. 1992); *Defenbaugh & Co. of Leland v. Rogers*, 543 So. 2d 1164, 1167 (Miss. 1989); and *Tideway Oil Programs, Inc.,*

18

*v. Serio*, 431 So. 2d 454, 456 (Miss. 1983)). He insists that, because punitive damages were not awarded, the chancellor erred in awarding attorney's fees.

¶42. Judge McGehee told the parties he would hold a separate hearing on attorney's fees. And he asked each party to submit briefs. Saul briefed the court on the issue, but Swartzfager did not. With his brief, Saul provided affidavits from attorneys, describing the forty-percent contingency fee charged by Saul's attorney as fair and reasonable for the work performed. And to support the nature of his attorney's legal work, Saul attached time sheets, depicting the various tasks performed. The detailed work records listed the dates and tasks provided by each attorney, including the hours worked and each attorney's usual billable rate. Swartzfager, by comparison, opted not to pursue a separate hearing on attorney's fees. Nor did he provide a brief or memorandum contesting the fees. Instead, he agreed to a joint motion, with Saul, for a ruling on the matter—effectively waiving the separate hearing. So, at no point did Swartzfager seriously challenge the issue of attorney's fees or contest Saul's submissions.

¶43. This Court has held attorney's fees may be awarded in cases where punitive damages are, or would be, proper, but are not actually awarded. *See Aqua-Culture Technologies, Ltd. v. Holly*, 677 So. 2d 171, 184-85 (Miss. 1996); *see also Pursue Energy Corp. v. Abernathy*, 77 So. 3d 1094, 1100-01 (Miss. 2011). Furthermore, punitive damages are not a prerequisite for attorney's fees, and a chancellor does not abuse his or her discretion by awarding such fees where an award of punitive damages would have been justified. *Aqua-Culture*, 677 So. 2d at 184-85. Judge McGehee found Swartzfager's actions were egregious—" the ultimate

bad faith in disrupting someone else's life for the sole purpose of benefitting his own." Clearly, punitive damages would have been justified here. So, we review Judge McGehee's award of attorney's fees for abuse of discretion. *Id.* at 185. And based on the record and the chancellor's findings, we see no abuse of discretion on this issue and affirm.

### V. Prejudgment Interest

¶44. Swartzfager's final claim is that the chancellor improperly awarded prejudgment interest. While a party is no longer required to plead with specificity the date from which prejudgment interest accrues, a party must assert a demand for prejudgment interest in the appropriate pleading. *Bailey Brake Farms, Inc. v. Trout*, 116 So. 3d 1064, 1071 (¶ 25) (Miss. 2013) (citing *Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100, 1118 (¶ 45) (Miss. 2007)). Saul did not specifically demand prejudgment interest in either his original or amended complaint. He merely made a request for general relief. And a request for general relief in a complaint seeking equitable relief does not give the defendant notice of a claim for prejudgment interest. *Id.* (citing M.R.C.P. 8); *see also Arcadia Farms P'ship v. Audubon Ins. Co.*, 77 So. 3d 107, 115 (¶ 22) (Miss. Ct. App. 2011) (the purpose of M.R.C.P. 8 is to provide sufficient notice of the claims and grounds upon which relief is sought).

¶45. Saul failed to make a demand for prejudgment interest, and no record evidence exists to show that Swartzfager was on notice of a claim for prejudgment interest. So the issue of

20

prejudgment interest was not before the court, and the chancellor erred by awarding prejudgment interest.[7]

## Conclusion

¶46.    Swartzfager's June 7, 2007 writing, along with Saul's drawing, constitute a valid, enforceable agreement.  Swartzfager, as both the agreement's drafter and an attorney, is responsible for any deficiencies or ambiguities.  And, even if there was no enforceable contract, Swartzfager is equitably estopped from denying the land deal.  We thus find the awards and related expenses, including the intentional infliction of emotional distress award and attorney's fees, were proper.  However, the chancellor erred in awarding prejudgment interest.  We therefore affirm the trial court in part, reverse the award of prejudgment interest, and remand for a new calculation of damages and attorney's fees that does not include prejudgment interest, based on the evidence already submitted to the trial court and consistent with this Court's opinion.

¶47.    **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., KING, COLEMAN, BEAM, AND CHAMBERLIN, JJ., CONCUR. RANDOLPH, P.J., AND KITCHENS, J., NOT PARTICIPATING.**

---

[7] Because we reverse and render the prejudgment interest award, we need not discuss whether Saul's damages were liquidated when he filed his complaint or if Swartzfager acted in bad faith.