# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00513-COA

**JAMES ALAN SIDERS**                                                        **APPELLANT**

**v.**

**JANE ZICKLER**                                                               **APPELLEE**

DATE OF JUDGMENT:               03/06/2020
TRIAL JUDGE:                    HON. DEBORAH J. GAMBRELL
COURT FROM WHICH APPEALED:      LAMAR COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         NICHOLAS KANE THOMPSON
ATTORNEY FOR APPELLEE:          S. CHRISTOPHER FARRIS
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
DISPOSITION:                    AFFIRMED - 03/09/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., McDONALD AND LAWRENCE, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.     Pursuant to the property settlement agreement (PSA) incorporated into his divorce

decree, James (Jim) Siders agreed to maintain a life insurance policy designating his ex-wife,

Jane Zickler, as the beneficiary.  Jim failed to maintain the policy, and the chancellor found

Jim in contempt and ordered him to obtain a new policy with the same face value as the

original policy and designate Jane as the policy's owner.  On appeal, Jim argues that the

divorce decree and PSA did not require him to maintain a life insurance policy because he

allowed his only such policy to lapse *before* he signed the PSA.  He also argues that Jane's

contempt action is barred by the statute of limitations and equitable estoppel and that the

chancellor erred by ordering him to make Jane the owner of the new policy.  For the reasons

discussed below, we find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Jim and Jane married in 1978.  They had two children, born in 1981 and 1985.  In August 2003, they negotiated a PSA and filed a joint complaint for an irreconcilable differences divorce.  In October 2003, the chancery court granted them a divorce, incorporating the PSA as part of the divorce decree.

¶3.     As relevant here, the PSA states, "[Jim] shall continue to maintain the life insurance policy that is now in effect and shall name [Jane] as irrevocable beneficiary of said policy. If [Jane] dies, then the children of the parties shall be named as irrevocable beneficiaries." Jane alleges that she insisted on this provision in consideration for not pursuing alimony.

¶4.     However, Jim alleges that he did not have a life insurance policy "in effect" when he signed the PSA or when the divorce was granted.  Previously, Jim had an Equitable Variable Life Insurance policy with a face value of $211,543 ("the Equitable policy").  However, Jim alleges that he had allowed the Equitable policy to lapse in 2002.

¶5.     Jim alleges that in November 2003, about one month *after* the parties' divorce, he obtained a new ten-year term life insurance policy with a face value of $250,000 ("the term policy"). In August 2013, Jane requested a copy of the beneficiary statement for Jim's policy to confirm that she was listed as the sole primary beneficiary.  However, the beneficiary statement she received listed the parties' children and Jim's new wife as additional primary beneficiaries.  Jane objected, and Jim had the policy changed to make Jane the sole primary beneficiary.  Unbeknownst to Jane, this policy lapsed just a few months later, in or around

2

November 2013.

¶6.     Jim argues that the PSA did not require him to maintain a policy because no such policy was "in effect" when he signed the PSA. Thus, Jim argues that he obtained the ten-year term policy "voluntarily." He also alleges that Jane was aware of the terms of the new policy and "accepted" it without "complaint," including its ten-year term. Jane denies Jim's allegations. She alleges that she knew nothing about the specific terms of the policy because the only documents that Jim ever provided to her were the beneficiary statements.

¶7.     It is unclear when exactly Jane discovered that Jim had again failed to maintain a life insurance policy naming her as the primary beneficiary. In 2019, Jane filed a petition for contempt, alleging that Jim should be held in contempt for failing to maintain a policy.

¶8.     The chancellor held a hearing on Jane's motion, although no transcript was included in the record. The chancellor also directed the parties to submit letter briefs on the motion. The chancellor found that the Equitable policy was in effect prior to the divorce and that Jim failed to show that it had lapsed prior to the divorce. The chancellor found Jim in contempt for failing to maintain the policy and ordered him to obtain a new policy with same face value ($211,543) and to make Jane the owner of the new policy.

¶9.     Jim filed a motion to alter or amend the judgment and later filed an amended motion to alter or amend the judgment. Jim's amended motion attached what purports to be a letter from the insurance company and an unsigned draft affidavit that Jim's attorney had prepared for an employee of the company. The documents purport to show that the Equitable policy lapsed in June 2002. The chancellor denied Jim's motion, and Jim appealed.

3

¶10. On appeal, Jim argues that the chancellor erred by finding him in contempt and by denying his motion to amend the judgment. He claims that the divorce decree did not require him to maintain a life insurance policy because no policy was "in effect" when he signed the PSA; that the chancellor improperly shifted the burden of proof; that the chancellor had no authority to order him to make Jane the owner of the new policy; and that Jane's contempt action was barred by the statute of limitations or equitable estoppel.

**ANALYSIS**

¶11. "We employ a limited standard of review in domestic relations cases." *Gerty v. Gerty*, 265 So. 3d 121, 130 (¶33) (Miss. 2018) (quoting *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010)). We will not reverse the chancellor's findings of fact unless they are not supported by substantial evidence or the chancellor clearly or manifestly erred or abused her discretion. *Id.* We review issues of law, including the interpretation of a property settlement agreement, de novo. *Id.*

> **I. The chancellor did not err by finding Jim in contempt or by denying his motion to amend the judgment.**
>
> **A. The divorce decree required Jim to maintain a life insurance policy.**

¶12. Jim's primary argument is that the PSA and divorce decree did not require him to maintain a life insurance policy. He emphasizes that the PSA states, "[Jim] shall continue to maintain the life insurance policy *that is now in effect . . . .*" (Emphasis added). Jim reasons that because he had allowed the Equitable policy to lapse before he signed the PSA, this provision did not require him to do anything. This argument fails because the PSA

4

clearly required him to maintain a specific life insurance policy, and the Equitable policy is the only policy that the parties could have contemplated.

¶13.   A property settlement agreement that is incorporated into a divorce decree "must be interpreted by courts as any other contract." *Dennis v. Dennis*, 234 So. 3d 371, 376 (¶15) (Miss. 2017) (quoting *West v. West*, 891 So. 2d 203, 210 (¶13) (Miss. 2004)).  When the agreement's language is "clear or unambiguous," we will enforce it as written. *West*, 891 So. 2d at 210 (¶14).  If it "is not so clear, we will, if possible, harmonize the provisions in accord with the parties' apparent intent." *Id.* (quotation marks omitted).

¶14.   Even if Jim permitted the Equitable policy to lapse prior to the parties' divorce, there is no evidence that Jane was aware of that fact.  Moreover, Jim's signature on the PSA was tantamount to a representation to Jane—*and to the chancery court*—that the policy *was* still "in effect" when Jim signed the PSA.  In addition, "grammar and usage establish that 'the' is 'a function word indicating that a following noun or noun equivalent is definite or has been previously specified by context.'" *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (brackets and ellipsis omitted) (quoting *Merriam-Webster's Collegiate Dictionary* 1294 (11th ed. 2005)).  Thus, the PSA's statement that Jim "shall maintain *the* life insurance policy that is now in effect" shows that the parties had in mind a specific policy that Jim would continue to maintain.  Based on the pleadings and evidence in the record, the Equitable policy is the *only* policy that the parties could have contemplated in the PSA.  Jim's argument that the PSA did not require him to maintain a policy is without merit.

¶15.   While not directly on point, this Court's decision in *Morgan v. Morgan*, 744 So. 2d

321 (Miss. Ct. App. 1999), is instructive. In *Morgan*, the parties' property settlement agreement required the husband to convey title to a car (a Honda Civic) to the wife, make all remaining payments on the car note, and pay for insurance and car tag fees until the car note was paid off. *Id.* at 321-22 (¶1). Less than a year after the divorce, the Civic was totaled in a wreck. *Id.* at 322 (¶2). At the time, there were still twenty-seven monthly payments due on the car note. *Id.* The wife used the insurance proceeds to pay off the note, but the surplus proceeds were insufficient to pay for a comparable replacement car, and the husband refused to make any further payments toward a replacement car, insurance, or car tag fees. *Id.* On appeal, this Court held that the "true intent of the parties" was for the husband to provide the wife "a vehicle at no cost to her." *Id.* at 324 (¶¶11-12). We reasoned that the wife was entitled to "the full benefit of her bargain" under the parties' agreement and that the husband should not "enjoy[] an unexpected and inequitable windfall" by avoiding all remaining payments contemplated by the parties' agreement. *Id.* at 324-25 (¶¶15, 19). We held that based on the parties' agreement, the wife was entitled to an "equitable remedy" that would allow her to acquire a replacement car and compel the husband to make payments comparable to those contemplated by the parties' agreement. *Id.* at 324 (¶15);[1] *see also Lestrade v. Lestrade*, 49 So. 3d 639, 644 (¶19) (Miss. Ct. App. 2010) (explaining that in *Morgan*, "the property settlement agreement presupposed the continued existence of the

---

[1] This Court also remanded the case for the chancellor to address the husband's defense of "unclean hands," which was based on unrelated conduct by the wife. *See Morgan*, 744 So. 2d at 325-26 (¶20). We held that unless the chancellor found that the wife's contempt action was barred by unclean hands, she was entitled to the equitable remedy described above. *Id.*

6

[Civic] and was frustrated by its loss," and "[w]e allowed a slight modification of the agreement to preserve the parties' obligations as originally contemplated").

¶16. This is an easier case than *Morgan*. In this case, the PSA was not frustrated by events beyond Jim's control but by Jim's own failure to maintain the Equitable policy. Under these circumstances, the chancellor properly ordered Jim to obtain a new policy to replace the policy he had allowed to lapse.

¶17. The essence of Jim's primary argument on appeal is that he should win because he successfully defrauded both his ex-wife and the chancery court when he signed the PSA and obtained a divorce based upon it. By signing the PSA, Jim made an implied but clear representation to his ex-wife and the court that he had a life insurance policy that was still "in effect." Yet, Jim now argues that he was not required to maintain a policy because his representation was false. This argument is without merit. Jim should consider himself lucky that the court simply ordered him to obtain a new policy and did not impose additional sanctions.

### B. The chancellor did not improperly shift the burden of proof.

¶18. "The burden of proof in a contempt action is on the movant," but a "failure . . . to comply with a divorce decree is prima facie evidence of contempt." *Weeks v. Weeks*, 29 So. 3d 80, 86 (¶23) (Miss. Ct. App. 2009). "To rebut a prima facie case of contempt, a defendant must show an inability to pay, that the default was not willful, that the provision violated was ambiguous, or that performance was impossible." *Garner v. Garner*, 283 So. 3d 120, 141 (¶93) (Miss. 2019) (quotation marks and brackets omitted).

7

¶19. Jim argues that the chancellor improperly shifted the burden of proof by requiring him to show that no policy was in effect at the time of the divorce. We disagree. To begin with, for the reasons discussed above, the chancellor properly ordered Jim to obtain a new policy even if Jim did allow the Equitable policy to lapse prior to the divorce. In other words, the result is the same whether the policy lapsed prior the divorce—in which case Jim misled his ex-wife and the court by signing the PSA—or after the divorce—in which case Jim was in contempt of court for failing to comply with the PSA.

¶20. Moreover, the chancellor did not engage in any improper burden-shifting. Jim's signature on the PSA constituted an implied representation (i.e., evidence) that the Equitable policy was still "in effect" at the time of the parties' divorce. Based on that evidence, the chancellor did not err by finding that it was still in effect. It was not until after the chancellor had entered a final judgment that Jim submitted a letter and an unsigned draft affidavit purporting to show that the policy lapsed prior to the divorce. The chancellor was not required to reconsider her ruling based on evidence that Jim could and should have obtained prior to the chancellor's ruling. *See, e.g.*, *Handy v. Madison Cnty. Nursing Home*, 192 So. 3d 1005, 1011-12 (¶¶21-22) (Miss. 2016) (explaining that such a motion is reviewed for an abuse of discretion and that evidence that the movant could have obtained and presented previously is not a valid basis for reconsideration); *Rainer v. River Oaks Hosp. LLC*, 282 So. 3d 751, 759 (¶¶29-32) (Miss. Ct. App. 2019) (same).

## II. The chancellor did not err by ordering Jim to name Jane as owner of the new policy.

¶21. When the parties have reached a property settlement agreement and the chancellor has

approved it, we will generally "take as dim a view of efforts to modify it." *Dennis*, 234 So. 3d at 377 (¶19) (quoting *Bell v. Bell*, 572 So. 2d 841, 844 (Miss. 1990)). "Property settlement agreements are fixed and final, and may not be modified absent fraud or contractual provision allowing modification." *Weathersby v. Weathersby*, 693 So. 2d 1348, 1352 (Miss. 1997). However, a party "may waive specific provisions by failing to carry out [his] own responsibilities." *Id.*

¶22. Jim argues that the chancellor improperly modified the PSA by ordering him to make Jane the owner of the life insurance policy. We disagree. The PSA required Jim to maintain the Equitable policy. If Jim had lived up to that obligation, then there would have been no basis or occasion for the chancellor to order him to do anything else. However, Jim failed to live up to his obligation, which required Jane to bring a contempt action and required the chancellor to enter an order to remedy Jim's contempt. By ordering Jim to make Jane the owner of the replacement policy, the chancellor effectively ensured that Jane will receive notice if Jim again fails to live up to his obligation and allows the new policy to lapse. Furthermore, Jim fails to articulate how he is prejudiced by this requirement, and we find no error or abuse of discretion in it. Rather, we hold that Jim "waive[d] [the] specific provisions [of the original PSA] by failing to carry out [his] own responsibilities." *Id.*

### III. Jane's contempt action is not barred by the statute of limitations.

¶23. "The application of the statute of limitations is a question of law, which we review de novo." *Moseley v. Smith*, 180 So. 3d 667, 672 (¶23) (Miss. Ct. App. 2014). This Court has previously recognized that a property settlement agreement is not an ordinary contract

9

but is "incorporated into the final judgment of divorce." *Id.* at 673 (¶24). Therefore, a contempt action to enforce such an agreement is considered an action to enforce a judgment, and it is subject to the seven-year statute of limitations applicable to such actions. *Id.* at (¶25) (citing Miss. Code Ann. § 15-1-43 (Rev. 2012)). Jane filed her contempt action within seven years after Jim breached the PSA by allowing his insurance policy to lapse in 2013. Therefore, Jane's action is not barred by the statute of limitations.

¶24. Jim argues that Jane's claim is barred by the three-year statute of limitations applicable to claims for breach of contract. Miss. Code Ann. § 15-1-49 (Rev. 2019); *Anderson v. LaVere*, 136 So. 3d 404, 411 (¶32) (Miss. 2014). However, as just stated, this Court held in *Moseley* that section 15-1-43's seven-year statute of limitations applies to a contempt action to enforce a property settlement agreement that has been incorporated into a divorce decree. *Moseley*, 180 So. 3d at 673 (¶25). Accordingly, Jim's argument is without merit.[2]

### IV. Jane's contempt action is not barred by equitable estoppel.

¶25. The doctrine of equitable estoppel "is based on public policy, fair dealing, good faith and justice." *Swartzfager v. Saul*, 213 So. 3d 55, 65 (¶27) (Miss. 2017) (quotation marks and brackets omitted). The doctrine "prevents a party from denying any material fact, induced by his or her words or conduct, upon which another person relied and changed his or her position and would suffer injury if the denial or contrary assertion was allowed." *Id.* "It is

---

[2] We also note that Jim's answer failed to raise the statute of limitations as a defense with respect to his failure to maintain life insurance. Rather, he only raised the statute of limitations with respect to a separate claim for unpaid child support.

10

premised on the belief that a person should do what he says he will do in situations where another party is injured by reliance on the first party's representations." *Id.* (quotation marks omitted). "And its aim is to forbid one to speak against his own act, representations, or commitments to the injury of one to whom they were directed and who reasonably relied thereon." *Id.* (quotation marks omitted).

¶26. Jim argues that Jane should be equitably estopped from pursuing her contempt action because she knew that he had obtained a ten-year policy and did not insist that he extend the policy beyond that term. Jim argues that Jane's "acquiescence represented that she was satisfied with the policy" and that he "relied on her representations to his detriment by continuing to pay the premiums for that ten-year policy."

¶27. However, Jim failed to present any evidence in the chancery court to support his argument. To invoke the doctrine of equitable estoppel, Jim must show (1) that he believed and relied on some representation by Jane; (2) that changed his position as a result; and (3) that he suffered some detriment or prejudice because he changed his position. *Strickland v. Day*, 239 So. 3d 486, 493 (¶30) (Miss. 2018). The record contains no evidence that Jane was aware of the details of the term policy or that she ever acquiesced in Jim's failure to maintain a life insurance policy. In the pleadings, Jim made vague *allegations* concerning Jane's knowledge and acquiescence, but allegations are not evidence. Moreover, Jim fails to articulate how he detrimentally relied on Jane's alleged acquiescence. He says that he suffered a "detriment" because he continued to pay premiums on the term policy. But Jim was obligated to maintain a life insurance policy because the PSA required him to do so, not

11

because of anything that Jane subsequently said or led him to believe. Put simply, Jim failed to present any evidence of equitable estoppel, and the chancellor did not err by granting Jane the relief she sought.

¶28. Finally, Jim's own unclean hands bar his estoppel argument. "As a matter of law, a party may not assert equitable estoppel if he has 'unclean hands.'" *Nicholas v. Nicholas*, 841 So. 2d 1208, 1213 (¶16) (Miss. Ct. App. 2003) (citing *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 265 (¶18) (Miss. 1999)). Jim's misrepresentation in the PSA precludes his reliance on the doctrine of equitable estoppel.

## CONCLUSION

¶29. In his PSA, Jim voluntarily agreed to maintain a life insurance policy. By signing the PSA, Jim impliedly but clearly represented to his ex-wife and the chancery court that the policy was "in effect." The chancellor did not err by ordering Jim to maintain a new policy with the same face value as the policy contemplated by the PSA. Nor did the chancellor err by ordering Jim to make Jane the owner of the new policy.

¶30. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**

12