# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00048-COA

**ARCHIE LEE BECKWORTH**                                        **APPELLANT**

**v.**

**ANN BECKWORTH**                                                    **APPELLEE**

DATE OF JUDGMENT:              12/14/2021
TRIAL JUDGE:                          HON. W. ASHLEY HINES
COURT FROM WHICH APPEALED:  SUNFLOWER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      ALSEE McDANIEL
ATTORNEY FOR APPELLEE:       JASON EDWARD CAMPBELL
NATURE OF THE CASE:            CIVIL - OTHER
DISPOSITION:                  AFFIRMED - 04/18/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., WESTBROOKS AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     Two siblings agreed to purchase a foreclosed home together. They were supposed to split the down payment, but the brother never sent the money.

¶2.     The sister covered the entirety of the down payment and was the sole person listed on the deed. The brother later moved into the house. According to him, he was paying half the mortgage on the home and was entitled to co-ownership. According to the sister, he was only paying rent.

¶3.     The sister subsequently had her brother evicted. He counterclaimed, arguing co-ownership and that equitable estoppel provided him relief. The trial court found in favor of the sister that the brother had no ownership interest in the home. After review, we affirm.

## BACKGROUND

¶4.    A bank was foreclosing on a home in Indianola, and siblings Archie and Ann Beckworth made an agreement to purchase it. The agreement was not in writing. According to Ann, she was supposed to split the down payment with her brother and would put him on the deed if he covered his end. According to Archie, he was only supposed to provide the earnest money and closing costs.

¶5.    Archie later explained that he sent $1,500 to his sister as his portion of the earnest money. He sent the money to his sister Charlene, who then was to give it to his sister Bertha. He and Ann "set it to do business through Charlene" since they were both living out of state at the time. Charlene was to give the money to Bertha to "carry the money over there to the real estate man." According to Archie, after sending the $1,500, he agreed to pay one-half of the mortgage payments, which was $325 monthly.

¶6.    But in Ann's view, Archie was supposed to provide $7,500, half of the down payment. She later testified that her brother told her he only had $5,000. Ann agreed that Archie could pay $5,000 and be added to the deed later. However, Ann later testified that at closing, Archie told her that he no longer had the money to put toward the down payment. As a result, Ann told Archie that he could not be "part" homeowner but agreed to let Archie rent a room in the home. According to Ann, after Archie failed to come up with his portion of the money, she decided to proceed with the purchase of the home in her name only.

¶7.    Ann filed for eviction against Archie in justice court. She alleged Archie was not a

2

co-owner but only a tenant in the home. After the justice court found in Ann's favor, Archie appealed to circuit court.

¶8. During trial, Archie wanted to provide proof of the oral agreement between the siblings, but the trial court refused to allow it. Archie was evicted and appealed; the case was assigned to us for review.

¶9. On appeal, we found that "[t]he circuit court, citing the statute of frauds, erroneously denied Archie any opportunity to demonstrate the elements of equitable estoppel." *Beckworth v. Beckworth*, 312 So. 3d 391, 394 (¶8) (Miss. Ct. App. 2021). Holding that "the circuit court committed reversible error," we reversed and remanded for the trial court to consider Archie's claim for equitable estoppel. *Id*. at 392 (¶2).

**PROCEDURAL HISTORY**

¶10. On remand, the circuit court, sitting without a jury, conducted a trial. Archie, Ann, their brother Albert, and their sister Bertha all testified.

¶11. Archie explained that the first conversation he and Ann had regarding purchasing the home was held on a family conference call. According to Archie, this call included siblings Ann, Albert, Bertha, Leon, and Charlene. Per his testimony, Ann would get the property for him in her name. In Archie's view, when Ann moved back to Indianola, they "were already on the same page that the home did belong to [him] at the time."

¶12. Archie also said that during the three years he was living in Chicago, he was sending Ann monthly payments for the home. Archie heavily emphasized that at all times he thought

3

his money was going to purchase the home, not to pay rent.

¶13.  Next, Albert took the stand in support of Archie's position.  He testified it was his understanding Archie and Ann were buying the home together.  He also remembered the family conference call where Archie and Ann discussed the purchase of the home.  He testified he had a conversation with Ann where she discussed leaving Archie's name off the deed but said she would add it later.  According to Albert, Ann had two sales contracts for the home: one that reflected a down payment of $3,000 and one that reflected a $0 down payment.  He remembered Ann showing him the $0 down-payment contract.

¶14.  In support of Ann's defense, she called her sister Bertha to the stand.  Because "Ann was in New York" when the closing was scheduled, Bertha stated she "was given power of attorney to go ahead and take care of all the business that I need to take care of" and signed the papers at closing.  She swore that Archie's name was not included at all on any of the paperwork.  According to Bertha, Archie knew his name was not on the contract or deed.  Bertha further testified Archie would travel to and from Chicago a few times a month, and the $325 was to rent the room that he stayed in while visiting.  Bertha also said she spoke only to Ann regarding a bid for the home—not Archie.

¶15.  Lastly, Ann testified.  She maintained that in accordance with their agreement, in order to be co-owners, Archie was to pay half of the down payment for the home. The total down payment of the home was $15,000, so to satisfy his portion, Archie needed to come up with $7,500.  Per her testimony, Archie told Ann that he only had $5,000 to put toward the

4

home. She agreed to take the $5,000, and he would provide the remaining balance at a later time. Ann further testified that she had documentation reflecting that she paid the full $15,000 down for the home.

¶16. Ann also explained that when she began the closing process, she could not get in contact with Archie. Once she finally was able to reach him, he told her he had spent the money reserved for the down payment. She told him, "[Y]ou cannot be part homeowner and you don't have the money." Archie then asked if she would rent him a room because his landlord in Chicago sold the building, and all the previous tenants had to move out. She agreed.

¶17. The trial court found "the testimony of Ann and Bertha to be highly credible." The court acknowledged that both parties originally agreed to purchase the property together. Despite Archie's claim the agreement was never changed, both Ann and Bertha testified that the original agreement was not fulfilled. The court held, "Archie Beckworth was a tenant of Ann Beckworth." Further finding that "Archie has failed to prove that he changed position, to his detriment, in reliance upon an agreement with Ann to purchase the property," the court held that Archie failed to prove the elements of equitable estoppel.

¶18. Aggrieved, Archie now appeals.

## STANDARD OF REVIEW

¶19. In this case the circuit judge, sitting without a jury, heard the evidence and ruled based on the evidence presented. In such a situation, "the trial judge, sitting in a bench trial as the

5

trier of fact, has the sole authority for determining the credibility of the witnesses." *City of Jackson v. Lipsey*, 834 So. 2d 687, 691 (¶14) (Miss. 2003). "Where there is conflicting evidence, this Court must give great deference to the trial judge's findings." *Id.*

## DISCUSSION

¶20.  Archie argues the elements of equitable estoppel were established relative to the oral agreement made between him and his sister.

¶21.  The Mississippi Supreme Court has expressly held, "[W]ithout doubt, our statute of frauds provides that no contract for the conveyance of an interest in land is binding unless signed by the party to be charged." *PMZ Oil Co. v. Lucroy*, 449 So. 2d 201, 206 (Miss. 1984). "Equitable estoppel, however, is a well-established exception to our statute of frauds." *Id.* "[W]here the elements of equitable estoppel are present, the statute of frauds constitutes no bar to enforcement of that to which a party has agreed." *Id.* Additionally, "equitable estoppel may be enforced in those cases in which it would be substantially unfair to allow a party to deny what he has previously induced another to believe and take action on." *Id.* at (¶8). In particular, "the doctrine of equitable estoppel may be used to enforce an oral contract which would otherwise be unenforceable under the statute of frauds." *Powell v. Campbell*, 912 So. 2d 978, 981 (¶12) (Miss. 2005).

¶22.  The elements required for equitable estoppel are "(1) belief and reliance on some representation; (2) a change of position as a result thereof; and (3) detriment or prejudice caused by the change of position." *Williams v. US Bank Tr. N.A. ex rel. LSF8 Master*

6

*Participation Tr.*, 239 So. 3d 540, 544 (¶15) (Miss. Ct. App. 2017).

¶23.   In the present case, there is no dispute that Ann made a representation to Archie, orally agreeing to purchase the property together as co-owners. According to Archie, in reliance on the agreement with Ann, he paid a portion of the closing costs and made monthly payments toward the purchase of the home. Specifically, he argues that by paying substantial personal funds toward the purchase of the property and moving from his permanent residence into the home, he satisfies the next two elements to trigger equitable estoppel.

¶24.   Ann provided similar testimony regarding the original agreement to co-own the property but with one key distinction. According to Ann, she and Archie agreed to purchase the property as co-owners—but this co-ownership was contingent upon Archie contributing half of the down payment. Once Archie informed Ann he did not have his half of the down payment, naturally Ann told Archie that he could not be co-owner. Critically, the trial court found that Ann's and Bertha's versions of events were more credible than those of Archie and the other brother. Specifically, the trial court found "the testimony of Ann and Bertha to be highly credible."

¶25.   In response, Archie argues his money sent to Mississippi shows that he reasonably relied on the oral agreement with his sister plus "placed faith in her" to his detriment. In support, he cites a Mississippi Supreme Court case holding that "a party is or may be estopped from denying an agreement regarding real property where the other party to the oral agreement has detrimentally relied upon said representation and conduct." *Swartzfager v.*

*Saul*, 213 So. 3d 55, 64 (¶26) (Miss. 2017).

¶26.    However, the facts of that case are easily distinguishable from the present case.  In that case, the two parties involved reached an oral agreement for the purchase of a piece of property where the buyer would build a house.  *Id*. at 59 (¶1).  However, when the landowner received another offer, he asked the buyer if he would forgo the original land deal and select another piece of land.  *Id*.  The buyer agreed, and the landowner reduced the new agreement to writing.  *Id*.  In the meantime, the buyer, relying on the agreement made with the landowner, sold his home and moved his family into a mobile home.  *Id*. at (¶3).  Despite the deal, the landowner backed out.  *Id*.  The would-be buyer sued the landowner.  *Id*.  The trial court held that the buyer relied to his detriment on the representations made to him by the landowner and required the land to be sold.   *Id*. at 61 (¶10).  Aggrieved, the landowner appealed.  *Id*. at 62 (¶15).

¶27.    On appeal, the Supreme Court held that a contract existed; even absent a written contract, the buyer proved he detrimentally relied on the landowner.  *Id*. at 59 (¶2).  In deciding the case, the Court found the buyer "relied on the inducements—most notably selling his home."  *Id*. at (¶30).  Further, the landowner was able to negotiate his land deal with another potential buyer without interference or objection from the buyer only because he represented to buyer that in exchange for his approval, the landowner would transfer a different piece of property.  *Id*.  As a result, the landowner was estopped from denying the land deal.  *Id*. at 65 (¶26).

¶28.    In contrast to the buyer in *Swartzfager* who sold his home, there was testimony that Archie never fulfilled his end of the bargain.  Based on the oral agreement, Archie was required to calculate half of the down payment, but he told Ann he did not have the money.  In turn Ann told him he would not be co-owner of the home.  Since Archie never incurred "detriment or prejudice" from a change in position, the doctrine of equitable estoppel does not apply.

¶29.    Nor did Archie ever provide any evidence to support his claim that he changed positions in reliance upon his agreement with Ann.  He did not provide payments for taxes, insurance, improvements for the home, or any routine expenses a homeowner would incur.  When asked if he could provide evidence that he actually made a bid to purchase the home, he was unable to do so.  Archie only produced receipts of $325 monthly payments.  The trial court found these payments were just rent for a room in the home, not for the mortgage.

¶30.    Our standard of review declares that "the trial judge, sitting in a bench trial as the trier of fact, has the sole authority for determining the credibility of the witnesses," and we "must give great deference to the trial judge's findings."  *Lipsey*, 834 So. 2d at 691 (¶14).  In its written findings, the trial court expressly found "Ann and Bertha to be highly credible."  Regardless of our view of the record, the trial court "saw these witnesses testify" and "alone among the judiciary observed their manner and demeanor."  *Culbreath v. Johnson*, 427 So. 2d 705, 708 (Miss. 1983).  "He smelled the smoke of battle," not us, and absent some error, this credibility finding must be given deference.  *Id*.

¶31. There was a split in testimony as to what Archie was paying for—rent or mortgage—and the trier of fact determined the sisters were more credible than their brothers. Finding this call was within the discretion of the trial court, we affirm.

## CONCLUSION

¶32. The trial court made a finding of fact that the elements of equitable estoppel had not been met by Archie. Given the trial court's "sole authority" to determine the credibility of the witnesses, we affirm. *See Lipsey*, 834 So. 2d at 691 (¶14).

¶33. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**